No. 92-085

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

NAUTILUS INSURANCE COMPANY,

        Plaintiff and Appellant,

-vs-

FIRST NATIONAL INSURANCE, INC.,
d/b/a THE FNI GROUP,

        Defendant and Respondent.

FILED

SEP - 3 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Barry G. O'Connell and Cindy E. Younkin, Moore,
O'Connell, Refling & Manos, Bozeman, Montana

       For Respondent:

           Robert M. Carlson, Corette, Pohlman, Allen, Black &
Carlson, Butte, Montana

Submitted on Briefs:  July 30, 1992

Decided:  September 3, 1992

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Nautilus Insurance Company appeals from the granting of a directed verdict, and the judgment entered thereon, in favor of First National Insurance, Inc., by the Fifth Judicial District Court, Jefferson County. We affirm.

The dispositive issue on appeal is whether the District Court erred in directing a verdict for the defendant on the basis that no duty was owed to the plaintiff.

Patty Crane (Patty), now known as Patty Flynn, contacted Rick March (Rick) at First National Insurance, Inc. (FNI) in January, 1987, seeking fire and liability coverage for business property owned by herself and Walter Crane in Helena, Montana. Rick requested coverage through Sentinel General Agency (Sentinel) for both property and liability insurance and received a quote which he believed included the requested liability coverage. Sentinel sent Rick binders identifying coverage through Nautilus Insurance Company (Nautilus) and Aegon Insurance Company in the aggregate amount of $100,000 ($50,000 coverage by each insurer) for insuring the premises only; the effective date of the policies was February 27, 1987.

The Cranes advised Rick that they also needed liability coverage and he continued to seek coverage from other companies while the Nautilus policy was in effect. As a result of their own efforts, the Cranes obtained the coverage they desired from Travelers Insurance Company effective April 2, 1987. On that date, Patty told Rick about the new coverage and verbally requested FNI

2

to cancel the Nautilus and Aegon polices. Thereafter, via telephone and several letters, Rick advised the Cranes that in order to cancel the policies they must either return the policies or sign a cancellation request/policy release form. The Cranes did neither; nor did Rick inform Nautilus during this time that the Cranes desired to cancel or that they had obtained alternative coverage.

FNI paid the Nautilus premium on the Cranes' behalf on May 13 under its contract with Sentinel requiring payment of all premiums within 45 days of receiving an invoice; under the contract, the payment was due on or before May 15. Under the Nautilus policy, the "unearned premium" which could be recouped upon cancellation was prorated by quarters of the coverage year. In other words, once the coverage was effective on February 27, the maximum unearned premium which could be recovered on cancellation was 75%; the premium for the first three months' coverage--from February 27 to May 27--could not be recouped even if the policy were canceled prior to May 27. The Cranes' building and its contents were totally destroyed by fire on May 23, 1987.

The Nautilus policy was in effect on the date of the fire and the Cranes made a claim for their loss under the policy. Nautilus ultimately paid the $50,000 policy limit.

Nautilus filed suit against FNI in the First Judicial District Court, Lewis and Clark County. The complaint alleged that FNI's negligent failure to procure cancellation of the Cranes' Nautilus policy resulted in damage to Nautilus in the amount of $50,000 plus

3

interest. Upon motion by FNI, venue was changed to the Fifth Judicial District Court, Jefferson County. A jury trial was held on January 15 and 16, 1992. After Nautilus completed its case-in-chief, FNI moved for a directed verdict on the basis that it owed no duty to Nautilus to procure cancellation. The motion was granted, judgment was entered and Nautilus appeals.

Did the District Court err in directing a verdict for the defendant on the basis that no duty was owed to the plaintiff?

A directed verdict may be granted only when it appears as a matter of law that the nonmoving party could not recover upon any view of the evidence, including the legitimate inferences to be drawn from it. Hash v. State (1991), 247 Mont. 497, 500, 807 P.2d 1363, 1365; Wilkerson v. Sch. Dist. No. 15, Glacier Cty. (1985), 216 Mont. 203, 211, 700 P.2d 617, 622. On appeal, this Court must view a motion for a directed verdict in a light most favorable to the nonmoving party. Stout v. Montana Power Co. (1988), 234 Mont. 303, 305, 762 P.2d 875, 876.

Here, the District Court directed a verdict for FNI. While it did not state the basis for its decision in so many words, it is clear that the court determined that Nautilus could not prevail on its negligence claims against FNI because, under the undisputed facts of this case, FNI had no legal duty to Nautilus to procure cancellation of the policy. We agree.

Negligence forms the basis for Nautilus' complaint against FNI. There is no dispute that, absent a legal duty running from FNI to Nautilus, Nautilus cannot prevail. Actionable negligence

4

arises only from the breach of a legal duty. Thornock v. State (1987), 229 Mont. 67, 72, 745 P.2d 324, 327; Krone v. McCann (1982), 196 Mont. 260, 265, 638 P.2d 397, 400. Whether a legal duty is owed from one party to another is a question of law for the court. Roy v. Neibauer (1981), 191 Mont. 224, 226, 623 P.2d 555, 556. Thus, the question before us, as it was before the District Court, is whether a legal duty to procure cancellation of the policy was owed to Nautilus by FNI.

The parties agree, and the record supports the fact, that no contract or agency agreement existed between Nautilus and FNI. Margaret Crook, senior property examiner for Nautilus, testified that Sentinel was Nautilus' agent under a written agency contract and that FNI and Rick March were agents of the Cranes. She testified that FNI and Rick could neither bind Nautilus nor cancel the policy without the Cranes' cooperation.

Nautilus argues, however, that an implied agency relationship exists between an independent insurance broker and a carrier with whom coverage placement is made as to certain particulars. On the basis of this implied agency relationship, Nautilus asserts that FNI had a duty, under the facts of this case, to procure cancellation of the policy. Nautilus cites no cases or other authority directly on point in support of the existence of such a duty.

An insurance broker is usually regarded as the agent of the insured. 3 Couch on Insurance 2d (Rev. ed.), § 25:93 (1984). Nautilus witness Crook testified that FNI and Rick were the Cranes'

5

agents, not the agents of Nautilus.

Nautilus argues that, while an insurance broker acts for the insured in making the application and procuring the policy, he acts for the insurer in delivering the policy and in collecting and remitting premiums. Couch, § 25:94. While negligence in performing these specific acts on behalf of the insurer may result in liability absent a contractual agency relationship, Nautilus does not allege negligent performance by FNI of these acts. Instead, Nautilus seeks expansion of these acts by a broker on behalf of the insurer to include a duty to procure cancellation of the policy. However, the determination of which party a broker is acting for as to a particular matter depends on which party requested him to do the particular thing. Couch, § 25:94. Here, the Cranes requested the cancellation. "A broker is the agent of the insured where he is employed by the insured . . . to cancel and receive the unearned premium on a policy which had been obtained by him. . . . " Couch, § 25:95.

In the face of these accepted principles and the testimony of its own witness, Nautilus relies on our decision in Thayer v. Hicks (1990), 243 Mont. 138, 144-47, 793 P.2d 784, 788-90. Thayer addressed the extent to which an accountant owes a duty of care to third parties with whom he is not in privity. There the accountant had misrepresented financial information in a corporate audit to the subsequent detriment of the purchaser of the corporation. Under those facts, we adopted and applied § 552 of the Restatement of Torts, which provides in pertinent part:

6

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977). Nautilus asks us to apply § 552 to FNI in this case. We decline to do so.

Purporting to apply Thayer to the case before us, Nautilus focuses on subsection (2) of § 552 of the Restatement (Second) of Torts. However, Thayer involved misrepresented information. It is clear that subsection (1) of Restatement (Second) of Torts § 552 (1977), premises liability on the supply of false information. The case before us contains neither allegations nor proof of false information or misrepresentation. Thus, § 552 is totally inapposite here.

Here, FNI placed the coverage and obtained the premium set by Nautilus. The Cranes requested FNI to cancel the policy and FNI took steps, pursuant to that request, to accomplish the cancellation. Notwithstanding, cancellation did not occur prior to destruction of the insured property and Nautilus ultimately paid

7

the policy limits for the risk for which it had accepted a premium. Under these circumstances, FNI had no legal duty to take additional steps on Nautilus' behalf.  We hold that the District Court did not err in directing a verdict for the defendant.

Affirmed.

Karla M. Gray
_____
Justice

We concur:

J. A. Turnage
_____
Chief Justice

John Conway Harrison
_____

William E. Hunt Sr.
_____

_____
Justices

September 3, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Barry G. O'Connell
Moore, O'Connell, Refling & Manos
P.O. Box 1288
Bozeman, MT   59771-1288

Robert M. Carlson
Corette, Pohlman, Allen, Black & Carlson
P.O. Box 509
Butte, MT   59703

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy