No. 97-590

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 118

DORIS A. SCOTT, individually and as Personal
Representative of the Estate of John William Scott,
Deceased,

Plaintiff and Appellant,

v.

JAMES L. HENRICH, DAVID J. FLAMAND,
BUTTE-SILVER BOW LAW ENFORCEMENT
AGENCY, CITY OF BUTTE and COUNTY OF
SILVER BOW,

Defendants and Respondents.


APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Curtis G. Thompson, William D. Jacobsen and Steven T. Potts;
Thompson, Jacobsen & Potts, Great Falls, Montana

For Respondents:

Marshal L. Mickelson, Attorney at Law, Butte, Montana

Brendon J. Rohan, Attorney at Law, Butte, Montana


Submitted on Briefs: April 2, 1998

Decided:   May 5, 1998
Filed:

_____
   Clerk
Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Doris A. Scott (Doris) appeals from the decision of the Second Judicial District Court, Silver Bow County, granting James L. Henrich, David J. Flamand, Butte-Silver Bow Law Enforcement Agency, City of Butte and County of Silver Bow's (collectively Respondents') motion for summary judgment.  Doris asserts that Respondents acted negligently during a police confrontation which occurred in 1984 and resulted in the shooting death of Doris' husband, John William Scott (John).  The District Court determined that the officers acted reasonably as a matter of law, were not negligent and thus were not liable for damages as a result of John's death.  As a result, the District Court found that there were no genuine issues of material fact and that the Respondents were entitled to summary judgment as a matter of law.  We reverse and remand.

                Factual and Procedural Background

¶2    The events giving rise to this action were recently reviewed by this Court in Scott v. Henrich (1997), 283 Mont. 97, 938 P.2d 1363.  We review and expand the facts for purposes of this appeal.

¶3    In August 1984, John was landlord of an apartment building on the corner of Clark and Park Streets in Butte, Montana.  He and Doris lived in apartment number one and rented one of the other apartments to Patrick Sullivan (Sullivan).  Sullivan later obtained a roommate, Dean Maestas (Maestas).  The record indicates that Sullivan and Maestas were disruptive tenants and were suspected of burglarizing the apartment of another tenant.  As a result, John had served Sullivan and Maestas with an eviction notice.

¶4    On August 4, 1984, Sullivan and Maestas were in the process of moving to a new apartment.  At 12:57 on that day, John called law enforcement complaining of a disturbance caused by Sullivan and Maestas at their apartment on the corner of Park and Clark.  Officers Hanninen and Miller responded to the call, confirmed the disturbance and warned Sullivan and Maestas against causing further trouble.  At 3:25 p.m., John again summoned law enforcement with reports of a disturbance.  Officers Driscoll and Henrich arrived at the scene, but were informed by John that he had transported Sullivan away from the scene and that everything was fine.

¶5    Later that day, approximately 8:20 p.m., law enforcement received a report that someone had fired a gun at 623 South Colorado Street.  Officers Henrich, Flamand, Maylevac and Cassidy responded to the call.  Henrich and Flamand were the first to arrive at the location, which turned out to be Maestas' new apartment.  Maestas indicated that someone had shot at him. The officers observed a bullet hole in the porch and retrieved an expended 30/30 cartridge.  When the officers inquired as to who had shot at Maestas, Maestas said he did not know the individual's name, but produced the eviction

notice he and Sullivan had received from John.

¶6   Within minutes of the officers responding to the call at Maestas' apartment, the officers received a second report of a man firing a gun at 701 West Park Street.  The officers abandoned their investigation at Maestas' apartment and quickly responded to this second report.  Officer Flamand was the first to arrive at West Park Street.  He quickly questioned the manager of the City Center Motel about the alleged shooting.  The manager motioned that the individual went toward an apartment building across the street.  A bystander then informed Officer Flamand that the person firing the rifle was acting strangely, staggering, and had entered one of the two doors of the apartment complex.  The coroner's report later indicated that John had a .26 blood alcohol concentration, well beyond the legal  limit for a presumption of intoxication.

¶7   As the officers appeared on the scene, Officer Henrich approached and banged on one of the apartment doors and shouted "open up, police."  Henrich testified that he then heard someone fumbling with the locks.  As the door opened, John appeared on the other side allegedly armed with a weapon. Meanwhile, Flamand had retrieved a weapon from his patrol car and stationed himself outside the apartment to cover Henrich.  Although the entire confrontation lasted only seconds, Flamand recalls that John's weapon was pointed down when he opened the door, but that John raised the barrel of the weapon and pointed it toward the officers.

¶8   Officer Henrich shouted "drop the gun," or "he's got a gun," then fired a shot into the doorway.  Henrich's shot missed John.  Officer Flamand, however, mistakenly believing that John had fired the shot, shot four rounds, one of which hit and killed John.

¶9   Doris brought action in United States District Court (U.S. District Court) seeking redress under 42 U.S.C. § 1983 and alleging state law negligence claims of wrongful death and survivorship.  The U.S. District Court granted summary judgment in favor of Respondents on the § 1983 action determining that the officers' actions were objectively reasonable and refused to exercise jurisdiction over the state law claims.  As a result, Doris refiled her state law claims in the Second Judicial District Court, Silver Bow County (District Court), and concurrently appealed the decision of the U.S. District Court to the Ninth Circuit Court of Appeals.  The Ninth Circuit affirmed the decision of the U.S. District Court, and the United States Supreme Court subsequently denied certiorari.

¶10  Having exhausted her federal appeals, Doris proceeded with her state law claims in the District Court.  The District Court initially determined that the state law claims were barred by res judicata and entered summary judgment in favor of the Respondents.  Doris appealed the summary judgment ruling  to this Court.  In Scott, this Court was presented with the issue of whether the District Court properly entered summary judgment in favor of the Respondents on the basis of res judicata.  We explained that summary judgment based on res judicata was not proper because the U.S. District Court

ruled that the conduct of the officers did not rise to the level of gross negligence as required by 42 U.S.C. § 1983, and that in her state court action Doris was only required to show that the officers' conduct fell below that of a reasonable and prudent person under the circumstances in accordance with traditional negligence standards in Montana.  Thus, we determined that the District Court improperly relied on the opinions of the U.S. District Court and the Ninth Circuit that the officers acted reasonably.  This Court remanded the matter to the District Court for further consideration.

¶11  On remand, the Respondents again moved for summary judgment asserting that there were no genuine issues of material fact.  The District Court determined that the dispositive issue was whether the manner in which the officers approached the door and their conduct at the time of the shooting were reasonable.  The District Court determined that expert testimony presented by Doris, which indicated that the officers' conduct was unreasonable, was speculative and that she failed to produce competent evidence to overcome the Respondents' motion for summary judgment. The District Court concluded as a matter of law that Officers Henrich and Flamand reasonably feared the imminent use of deadly physical force and were therefore justified in responding with deadly force.  As a result, the court entered summary judgment in favor of the Respondents.  Doris appeals to this Court asserting that summary judgment was improper.  Doris presents one issue on appeal: Did the District Court err in granting summary judgment in favor of the Respondents on the grounds that the officers acted reasonably as a matter of law?

Discussion

¶12  Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.  This Court reviews a district court's ruling granting summary judgment de novo, using the same legal standards as the district court.  Smith v. Kerns (1997), 281 Mont. 114, 116, 931 P.2d 717, 718.

¶13  Upon a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  Bowen v. McDonald (1996), 276 Mont. 193, 199, 915 P.2d 201, 205.  In addition, all reasonable inferences must be drawn in favor of the party opposing the summary judgment.  Porter v. Galarneau (1996), 275 Mont. 174, 179, 911 P.2d 1143, 1146.  Finally, this Court has held that issues of negligence are generally not susceptible to summary judgment and are properly left for a jury determination at trial.  Kolar v. Bergo (1996), 280 Mont. 262, 266, 929 P.2d 867, 869.

¶14  Doris asserts that there are several genuine issues of material fact which should preclude summary judgment in this matter.  Doris' claims are grounded in the expert testimony of Dennis Payne (Payne), an expert in police practices and procedures who holds a masters of science degree in criminology and is a 25-year veteran of the Michigan Department of State Police.  Payne opines that the officers' role in the events leading up to the shooting death of John was unreasonable.  Payne is of the opinion that the officers should have treated

John as a "barricaded suspect." The Butte-Silver Bow Law Enforcement Agency Manual of Policies and Procedures stresses that "[a] barricaded suspect poses an extreme danger to officers who try to arrest him . . . . Officers should not immediately flush a barricaded suspect. Rather, they should develop and proceed with a tactical plan. . . . All efforts should be made to persuade the suspect to surrender before force is used." Payne indicates that the officers failed to follow procedures required by their own law enforcement agency. Payne further suggests that the officers could have followed any number of tactical procedures. In his opinion, their complete disregard for their own policies and procedures in favor of an "assault" on the doorway and the suspect was simply unreasonable.

¶15   In addition, Payne testified that John was likely a frightened and intoxicated landlord who felt threatened by troublesome tenants and probably would have welcomed the officers' assistance. Payne asserts that, had the officers taken appropriate action, John's death could have been avoided. Doris maintains that Payne's testimony alone raises a factual issue which is sufficient to defeat summary judgment.

¶16   In addition, Doris points to several other factual issues which she asserts raise doubts regarding the veracity of the officers' testimony in this case. Both Officer Henrich and Officer Flamand claim that when John opened the door of the apartment he was holding a gun and that the gun was pointed down. The officers further contend that during the split second confrontation in which Henrich shouted "he's got a gun" or "drop the gun," John raised the barrel and pointed the gun at the officers. However, Doris asserts that since John was the only other witness and his testimony is not available, the officers' testimony is self serving. Additionally, Doris presents circumstantial evidence which she believes would support the possibility of a different finding by a jury.

¶17   For example, immediately following the confrontation, Officer Cassidy investigated the scene. Officer Cassidy's report, written shortly after the shooting, indicated that the weapon found near John's body was the type of gun that breaks down or is hinged in the middle for loading. Officer Cassidy's report indicates that he believed that the gun (allegedly pointed at the officers) was open as if ready to be loaded or unloaded. Doris asserts that if the gun was broken down, there would be no way for John to point the gun at the officers. Two months after his initial report, however, Officer Cassidy retracted that portion of his written statement which indicated that the gun was open. In addition, Doris maintains that the State Crime Lab, which performed testing on John's weapon, was unable to confirm any fingerprints on the gun which the officers alleged John pointed at them. Finally, evidence also shows that the gun allegedly held by John was not loaded during or after the confrontation. Doris asserts that it is unlikely John would have aimed an unloaded weapon at police officers who had weapons pointed at him.

¶18 Doris further asserts that, although the officers testified that they shot John in the chest because he had a weapon pointed at them and the initial autopsy performed by County Coroner Robert Krause, M.D. indicated that the

fatal shot hit John in the chest, Dr. Krause, upon further investigation, amended his conclusions indicating that the fatal shot hit John in the back. Doris claims that if the confrontation occurred in "milliseconds" as the officers indicated, there would have been no time for John to turn around and be in a position to be shot in the back. Doris maintains that if she presented a jury with Payne's expert testimony that the officers acted unreasonably and the circumstantial evidence which calls into question the veracity of the officers' testimony, the jury could find the Respondents negligent for the wrongful death of John. As a result, Doris asserts that the District Court improperly granted summary judgment.

¶19  Respondents assert that the rationale used by the Louisiana Supreme Court in, Mathieu v. Imperial Toy Corp. (La. 1994), 646 So.2d 318, should be employed in this case. In Mathieu, the New Orleans Police Department was notified that a suspicious person with a gun was seen near a nursing home. Officers responded to the complaint, but could not find the individual. Shortly thereafter, the officers received another report of an individual with a gun in the same area peering into the nursing home windows. When the officers arrived on the scene, they were informed that the individual was lying in the grass, possibly asleep. The officers decided to approach the individual and attempt to disarm him. When the officers were within 4 to 6 feet of the individual, he raised his head and pointed the gun at the officers. The officers fired on the individual and eventually shot him. When they disarmed the individual, they discovered that the gun was a plastic toy and later learned that the individual was a delusional, paranoid schizophrenic who had stopped taking his medication and was detached from reality.

¶20  Mathieu sued the City of New Orleans, the officers, and the toy company for negligence. Mathieu presented expert testimony that indicated that alternative methods existed for confronting and disarming the suspect which may have avoided any need for using deadly force. The trial court found that the manner in which the officers approached Mathieu was negligent and the legal cause of his injuries and thus awarded damages. The appellate level court agreed, determining that the method employed by the officers left no alternative but to use deadly force if Mathieu made any movement. However, the Louisiana Supreme Court reversed. Using a seven-factor test to determine whether the officers were negligent, the court concluded that the conduct of the officers was reasonable under the circumstances and that the officers were not required to choose the "best" possible alternative for approaching the suspect, only a reasonable alternative. Mathieu, 646 So.2d at 325.

¶21  Respondents assert that Mathieu is controlling because, like the officers in Mathieu, Officers Henrich and Flamand were not required to use the best method of confronting John. However, we determine that Mathieu is not controlling in this case because Doris is not asserting that the officers were required to use the best method. Rather, Doris has presented expert testimony from Payne that the method employed by the officers was simply not reasonable under the circumstances.

¶22 When presented with Payne's expert testimony and the circumstantial evidence regarding the officers' veracity, reasonable jurors could differ as to whether the officers acted reasonably on the day of the shooting, thus genuine issues of material fact remain that preclude summary judgment. We hold that the District Court improperly entered summary judgment in favor of the Respondents on the grounds that the officers acted reasonably as a matter of law. Reversed and remanded.

/S/  W. WILLIAM LEAPHART

We concur:

/S/  JIM REGNIER
/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.
/S/  KARLA M. GRAY