No. 99-286

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 119

299 Mont. 449

999 P. 2d 1010

---

DEBRA LaTRAY and

MARLIN LaTRAY,

Plaintiffs and Appellants,

v.

CITY OF HAVRE, MONTANA,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Hill,

The Honorable Roy C. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William D. Jacobsen, Thompson, Jacobsen & Potts, Great Falls, Montana

For Respondent:

Brian Lilletvedt, Bosch, Kuhr, Dugdale, Martin & Kaze, Havre, Montana

_____

Submitted on Briefs: November 12, 1999

Decided: May 4, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 Debra and Marlin LaTray (the LaTrays) appeal from the grant of summary judgment in favor of the City of Havre (the City) by the Twelfth Judicial District Court, Hill County. In bringing suit against the City, the LaTrays alleged that the City's police officers had acted negligently in failing to exercise proper control over an intoxicated female whom they had transported to the Northern Montana Hospital, thus allowing her to intentionally assault and injure Debra LaTray (LaTray), a nurse at the hospital. The District Court held that since the assault was not reasonably foreseeable, the City owed no duty to LaTray. We reverse and remand for trial.

¶2 The LaTrays raise two issues on appeal:

¶3 (1) Did the District Court err in awarding summary judgment to the City on the ground that the individual's attack on LaTray was unforeseeable as a matter of law?

¶(4 (2) Should the trial of this case be moved to another county on remand?

## FACTUAL AND PROCEDURAL HISTORY

¶5 This case was initially tried before a jury in Hill County in June of 1998. At the close of the evidence in the first trial, the City made a motion for a directed verdict on the ground that the assault was unforeseeable. The District Court denied this motion, ruling that there was sufficient evidence of foreseeability to raise a jury issue. Ultimately, the jury returned a verdict in favor of the City. However, the District Court subsequently ordered a new trial because of juror misconduct. Following the award of a new trial, the City disqualified the trial judge and then moved for summary judgment. The LaTrays moved for a change of venue for the retrial based on the allegedly prejudicial publicity that had surrounded the first trial. The new trial judge denied the LaTrays' motion for a change of venue on retrial, and subsequently granted the City's motion for summary judgment.

¶6 The facts giving rise to this dispute occurred on June 25, 1991. Those facts, viewed in a light most favorable to the LaTrays, reveal the following. At approximately 9:00 a.m., the City's police dispatcher received a call from a citizen reporting that there were two girls fighting in downtown Havre. Two police officers, Lt. Gene Harada and Sgt. Michael Ritz (the officers), responded to the call in separate squad cars. Upon arriving at the scene of the fight almost simultaneously, the officers observed two large girls yelling at each other. The officers did not know the girls and had no prior knowledge of their criminal history or background. One of the girls, later identified as Marsha Cochran (Marsha), was attempting to leave the scene, while the other girl, later identified as her sister, Shawn Cochran (Shawn), was attempting to restrain Marsha.

¶7 There was blood visible on both girls. The officers immediately separated the two girls. Both officers testified that it was standard police procedure for officers, when responding to reports of physical disputes between citizens, to separate the combative parties and keep them separate. After separating the two girls, the officers learned that the girls were sisters and that Marsha had cut her wrists in an attempt to commit suicide. The officers also noted that both girls had been drinking; their police report later characterized Marsha and Shawn as having been "intoxicated."

¶8 The officers decided to place Marsha in protective custody and transport her to the hospital for medical and psychological evaluation. The officers had no basis for taking Shawn into custody. Although it was not necessary, the officers decided to transport

Shawn to the hospital as well and made plans to take the two girls to the hospital in separate squad cars. The officers testified, again, that it was standard police procedure to keep reported combatants separated. However, Shawn did not want to ride separately from her sister and resisted the officers' efforts to make her ride in a separate squad car. Notwithstanding the dictates of their training, the officers ultimately gave in to Shawn and allowed her to ride together with Marsha. One of the officers testified that in failing to keep the two girls separate, they were acting contrary to proper police procedure and were taking a risk that the girls might behave unpredictably.

¶9 During the ride to the hospital, the girls occasionally argued with each other. Upon arriving at the hospital emergency room driveway, one of the officers attempted to remove Marsha from the squad car but she resisted his efforts. At this point, Shawn began to act in an increasingly agitated manner. Although it was contrary to standard police practice, the officers allowed Shawn, who was unrestrained, to engage in the use of force to remove Marsha from the squad car. Shawn initially attempted to push Marsha out of the squad car. She then reached into the car and grabbed Marsha by the hair in an effort to forcibly drag her out of the vehicle. The officers made no attempt to remove or physically restrain Shawn, who appeared increasingly impatient with the situation. Finally, one of the officers was able to remove Marsha from the squad car. Shawn then grabbed hold of Marsha but the other officer told her to let go and she complied with his request.

¶10 At about this time, LaTray, who was working as a nurse in the emergency room of the hospital, came out of the emergency room. Seeing the officers and an injured person in the emergency room driveway, LaTray went over to render assistance. The officers did not request assistance from LaTray. While it was not common practice for nurses to come outside into the driveway when police arrived, one of the officers observed LaTray approaching and saw nothing improper with LaTray coming over to render assistance. When LaTray approached, Marsha screamed profanities at LaTray. LaTray could also hear Shawn yelling at her from the background.

¶11 When LaTray reached out to grab Marsha's arm and inspect her injuries, Shawn suddenly and without warning took a swing at LaTray and struck her in the jaw. The force of the blow caused LaTray to fall backwards against the open door of the squad car, thus injuring her back. Immediately after the incident, the officers had to wrestle Shawn to the ground. Shawn violently resisted and screamed profanities. With the assistance of other police officers, Shawn was finally restrained and placed in a squad car; however, Shawn then began kicking the door of the squad car with such force that it bowed outwards

several inches with each kick.

¶12 At trial, the LaTrays presented testimony from an expert in police procedures, Sam Damon (Damon), who stated that the officers committed numerous errors in their handling of the situation on June 25, 1991. Damon testified that the officers made the following errors: the officers failed to maintain control over the situation and, beginning with Shawn's refusal to ride in a separate squad car, had in fact allowed the girls to assume control over the situation; the officers failed to keep the girls separated from each other notwithstanding that the girls had been reported fighting and the officers' observations that the girls had been drinking; and the officers failed to deter or remove Shawn from the vicinity of the emergency room driveway when she began using force against her sister in an effort to extract her from the squad car. Damon also testified that, based upon the conduct of the girls, the officers should have foreseen that the failure to follow proper police procedures could create a potential for harm to persons in the vicinity.

## DISCUSSION

¶13 (**1**) **Did the District Court err in awarding summary judgment to the City on the ground that the individual's attack on LaTray was unforeseeable as a matter of law?**

¶14 We review a grant of summary judgment *de novo*, applying the same evaluation as the district court based on Rule 56, M.R.Civ.P. Summary judgment is proper only where the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P. The party seeking summary judgment has the initial burden of establishing the complete absence of genuine issues of material fact. Howard v. Conlin Furniture No. 2, Inc. (1995), 272 Mont. 433, 436, 901 P.2d 116, 118. Only where the moving party has carried its initial burden does the burden then shift to the non-moving party to show, by more than mere denial, speculation, or conclusory statements, that a genuine issue of material fact exists. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

¶15 In a summary judgment proceeding, the evidence must be viewed in the light most favorable to the non-moving party. Bowen v. McDonald (1996), 276 Mont. 193, 199, 915 P.2d 201, 205. In reviewing the record, all reasonable inferences will be drawn in favor of the party opposing summary judgment. Porter v. Galarneau (1996), 275 Mont. 174, 179, 911 P.2d 1143, 1146. Ordinarily, questions of negligence are poorly suited to adjudication by summary judgment and are better left for jury determination at trial. Scott v. Henrich,

1998 MT 118, ¶ 13, 288 Mont. 489, ¶ 13, 958 P.2d 709, ¶ 13; Kolar v. Bergo (1996), 280 Mont. 262, 266, 929 P.2d 867, 869; Wiley v. City of Glendive (1995), 272 Mont. 213, 216, 900 P.2d 310, 312; Pappas v. Midwest Motor Express, Inc. (1994), 268 Mont. 347, 350, 886 P.2d 918, 920; Dillard v. Doe (1992), 251 Mont. 379, 382, 824 P.2d 1016, 1018; Hendrickson v. Neiman (1983), 204 Mont. 367, 371, 665 P.2d 219, 222; Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1982), 197 Mont. 1, 10, 640 P.2d 453, 458.

¶16 The parties in this case agree that the assault committed on LaTray was purposeful and knowing. The District Court held that since the intentional assault was unforeseeable as a matter of law, the City owed LaTray no duty. Thus, akin to the issue we faced recently in Lopez v. Great Falls Pre-Release Servs., Inc., 1999 MT 199, 295 Mont. 416, 986 P.2d 1081, this case presents a dispute as to whether the intervening criminal attack by Shawn was an act that the City should reasonably have anticipated and taken precautions against. If the City had no reason to foresee the intervening criminal act of Shawn, then it cannot be held liable to LaTray. For "[i]t is axiomatic that in the absence of foreseeability, there is no duty; in the absence of duty, there is no negligence." *Lopez*, ¶ 26.

¶17 Intervening criminal acts of third persons are not automatically unforeseeable as a matter of law, but rather, must be addressed in the foreseeability context on a case-by-case basis. Starkenburg v. State (1997), 282 Mont. 1, 11, 934 P.2d 1018, 1023 (citing Estate of Strever v. Cline (1996), 278 Mont. 165, 178-79, 924 P.2d 666, 674). Moreover, although foreseeability is ordinarily analyzed only under the duty element of negligence, we explained in *Lopez* that in cases involving a dispute over the intervening criminal act of a third party, as here, foreseeability must be analyzed twice: first, with regard to the existence of a legal duty, and second, with regard to proximate causation. *See Lopez*, ¶¶ 27-28, 32. We discuss each component of foreseeability below.

## Foreseeability and the Existence of a Legal Duty

¶18 The existence of a legal duty is a matter of law to be determined in the first instance by the trial court. Nautilus Ins. Co. v. First Nat'l Ins., Inc. (1992), 254 Mont. 296, 299, 837 P.2d 409, 411. We review a district court's conclusion of law to determine whether it is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

¶19 At this point, it becomes necessary to address the City's contention that absent a

special relationship, it owed LaTray no duty of care. In making its claim that no special relationship existed here, the City relies on Phillips v. City of Billings (1988), 233 Mont. 249, 758 P.2d 772, in which we said:

> The majority rule states that [a police officer's] general duty to protect does not give rise to liability for a particular individual's injury absent a greater duty imposed by a special relationship. Under the facts of this case, we . . . refuse to find a duty based on the officers' general duty to protect the . . . public.

*Phillips, 233 Mont. at 253, 758 P.2d at 775 (citation omitted); see also Nelson v. Driscoll, 1999 MT 193, 295 Mont. 363, 983 P.2d 972 (discussing Phillips, the "public duty doctrine" governing police officers, and the special relationship exception to that doctrine). According to the City, the LaTrays have not claimed the existence of a special relationship or otherwise shown that the officers owed LaTray a greater duty of care than that owed to the general public.*

¶20 *Phillips* involved a negligence claim by the occupants of a vehicle which was struck by an intoxicated motorist who ran a red light. The intoxicated motorist had been approached two hours prior to the accident and questioned by Billings police officers, who declined at that time to arrest him despite having observed the smell of alcohol on his breath and empty beer cans in his parked vehicle. The plaintiffs sued the City of Billings, claiming that the officers were under a duty to control the potentially dangerous actions of the intoxicated motorist, which duty they had allegedly breached by failing to arrest him earlier in the day. This Court, as noted above, rejected the plaintiffs' assertion that the officers were under a duty of care notwithstanding the absence of a special relationship. We reasoned that the imposition of a legal duty depended upon the officers' "ability to control the third person." *Phillips*, 233 Mont. at 252, 758 P.2d at 775 (citing Restatement (Second) of Torts § 319 (1965)) (emphasis added). Because the officers did not have probable cause to arrest the intoxicated motorist when they had detained him earlier in the day, we held that they had no ability to control him and, thus, that no special relationship existed giving rise to a duty to the plaintiffs. *Phillips*, 233 Mont. at 252, 758 P.2d at 775.

¶21 In *Lopez*, we put forth the following, relevant passage:

> As a general rule, there is no duty to protect others against harm from third persons. W. Page Keeton & William Prosser, *Prosser and Keeton on the Law of Torts* § 56, at 385 (5th ed. 1984). "Traditionally," as we have recognized, "a person is not liable

for the actions of another and is under no duty to protect another from harm in the absence of a <u>special relationship of custody or control</u>." Krieg v. Massey (1989), 239 Mont. 469, 472, 781 P.2d 277, 279 (citing *Prosser and Keeton on the Law of Torts* § 56 (5th ed. 1984)) (emphasis added). Such a duty may arise where, as here, the special relationship is "custodial by nature," thus requiring the defendant to exercise reasonable control over his or her charge so as to prevent foreseeable harm to others. *See Prosser and Keeton on the Law of Torts* § 56, at 383-84 (5th ed. 1984).

*Lopez, ¶ 24.*

¶22 Moreover, we recently addressed the *Phillips* decision, clarifying that a police officer does not owe a duty to protect a third person, such as LaTray, from the actions of an individual absent a "custodial relationship" between the officer and the individual. *See Nelson*, ¶ 28. Thus, a duty to protect third persons arises "only when a police officer actually makes an arrest, or otherwise <u>takes possession or custody of an individual</u>." *Nelson*, ¶ 29 (emphasis added).

¶23 Here, in contrast to the situation presented in *Phillips*, the City's police officers entered into a "special relationship of custody or control" over Shawn, thus giving rise to a duty of care to third persons. *See Krieg*, 239 Mont. at 472, 781 P.2d at 279. While it is true that the officers did not actually arrest Shawn or otherwise have a basis for taking her into legal custody, they voluntarily undertook "possession or custody" of Shawn in transporting her to the hospital. *See Nelson*, ¶ 29. In so doing, they "took charge" of her person and, consequently, harbored the "ability to control" her actions to prevent an unreasonable risk of harm to third persons. *See Nelson*, ¶ 28; *Phillips*, 233 Mont. at 252, 758 P.2d at 775.

¶24 With respect to foreseeability in the context of duty, we have ascertained that duty is defined by the " 'scope of the risk which negligent conduct foreseeably entails.' " Busta v. Columbus Hosp. Corp. (1996), 276 Mont. 342, 363, 916 P.2d 122, 134 (quoting Mang v. Eliasson (1969), 153 Mont. 431, 438, 458 P.2d 777, 781). "[I]n analyzing foreseeability in the duty context," as we said in *Lopez*, "we look to whether or not the injured party was within the scope of risk created by the alleged negligence of the tortfeasor--that is, was the injured party a foreseeable plaintiff?" *Lopez*, ¶ 28.

¶25 The special relationship that existed between the officers and Shawn gave rise to a duty of care to foreseeable plaintiffs like LaTray. If a reasonably prudent defendant has no

reason to foresee "'any danger of direct injury [to the plaintiff] nor any <u>risk from an intervening cause</u>,'" then the defendant is not negligent. *Starkenburg*, 282 Mont. at 17, 934 P.2d at 1027 (quoting *Busta*, 276 Mont. at 362, 916 P.2d at 134) (emphasis added). Based upon Shawn's combative and agitated demeanor on the day in question, a reasonably prudent defendant would have foreseen that a failure to adequately restrain or otherwise control Shawn could pose an unreasonable risk of harm to others in her vicinity. Furthermore, both of the officers testified that the standard police practice of separating reported combatants, from which they departed in this case, is designed in part for the protection and safety of bystanders who happen to be in the vicinity of the incident. We determine that by voluntarily assuming custody of Shawn and transporting her to the hospital, the officers assumed the "ability to control" her actions to prevent harm to bystanders, like LaTray, who fall within the scope of the risk which negligent supervision would foreseeably entail. *See Phillips*, 233 Mont. at 252, 758 P.2d at 775.

¶26 The existence of a legal duty is a matter of law. *Lopez*, ¶ 31 (citing *Nautilus*, 254 Mont. at 299, 837 P.2d at 411). We hold, as a matter of law, that the City owed a duty of reasonable care to adequately supervise Shawn so as to prevent harm to any person, like LaTray, who would foreseeably be placed within the scope of risk arising from negligent supervision. Whether the City breached that legal duty, however, is an issue to be determined by the jury upon retrial. *See Estate of Strever*, 278 Mont. at 175, 924 P.2d at 672 (stating that breach of a legal duty is a question of fact suitable for resolution by the fact finder at trial).

Foreseeability and Proximate Cause

¶27 The causal issue of intervening acts of third parties normally involves questions of fact more properly left to the fact finder for resolution and, therefore, it is only when reasonable minds could reach but one conclusion regarding foreseeability that it is appropriate for a court to determine the issue as a matter of law. *Lopez*, ¶¶ 34-35 (quoting *Estate of Strever*, 278 Mont. at 178, 924 P.2d at 674; Kiger v. State (1990), 245 Mont. 457, 462, 802 P.2d 1248, 1251).

¶28 Here, as in *Lopez*, we are concerned with whether Shawn's assault was a superseding cause of the harm incurred by LaTray which, if not reasonably foreseeable, would break the chain of causation and absolve the City of liability. *See Lopez*, ¶ 33. In analyzing foreseeability in the context of proximate cause, this Court elucidated in *Lopez* that "we are concerned with whether and to what extent the defendant's conduct foreseeably and

substantially caused the specific injury incurred by the plaintiff." *Lopez*, ¶ 32. The conduct at issue here, as the City suggests, was the officers' decision to allow Shawn to accompany them to the hospital and their alleged failure to control Shawn while at the hospital.

¶29 The City contends that even if a legal duty existed, summary judgment was still properly granted because the LaTrays have failed to establish causation. Specifically, the City argues that since the officers testified that they had no reason to believe that Shawn would become aggressive or violent upon their arrival at the hospital, it was not reasonably foreseeable that a failure to adequately control Shawn would result in an intentional assault on LaTray. Therefore, the City asserts that based upon the record, reasonable minds could reach but one conclusion regarding foreseeability and proximate cause. We disagree.

¶30 As the LaTrays correctly indicate, this Court has held that summary judgment is improper where, as here, the credibility of a defendant's affiant may be crucial to adjudication of a material fact:

> "[W]here . . . credibility, including that of the defendant, is crucial, summary judgment becomes improper and a trial indispensable. It will not do, in such a case, to say that, since the plaintiff, in the matter presented by his [or her] affidavits, has offered nothing which discredits the honesty of the defendant, the latter's deposition must be accepted as true. We think that <u>Rule 56 was not designed thus to foreclose plaintiff's privilege of examining defendant at trial, especially as to matters peculiarly within defendant's knowledge</u>." [Emphasis added.]

Morrow v. FBS Ins. Montana-Hoiness LaBar, Inc. (1988), 230 Mont. 262, 265, 749 P.2d 1073, 1075 (quoting Arnstein v. Porter (2d Cir. 1946), 154 F.2d 464, 471).

¶31 As the LaTrays point out, the only individuals who observed the majority of events leading up to the assault were the two girls and the officers. The girls could not be located and did not testify at trial. LaTray herself witnessed only the events immediately preceding her injury, and during that time her attention was focused on Marsha rather than Shawn. Thus, the City's argument regarding lack of foreseeability is premised entirely upon the testimony of the officers that Shawn's conduct prior to the assault was cooperative, non-violent, and gave no indication that she posed any danger to those around her. As in *Morrow*, because most of the events leading up to the assault were matters peculiarly within the knowledge of the City's affiants and crucially dependent upon their

veracity and believability, summary judgment was improper and a trial indispensable.

¶32 Furthermore, when viewing the evidence in a light most favorable to the LaTrays, we determine that summary judgment was improvidently granted because there was sufficient evidence of Shawn's irascible conduct on the day in question to raise a jury question as to whether Shawn posed a danger to those around her. First, the officers received a report of two girls fighting in downtown Havre, and observed two girls yelling at each other upon arriving at the scene. Second, according to the officers' police report, the girls were "intoxicated." Third, even after a degree of force was applied, Shawn steadfastly refused to obey the officers' directive to ride in a separate squad car from her sister. Fourth, during the short drive to the hospital, the two girls continued to argue with each other. Fifth, once at the hospital, the officers observed Shawn attempt to extricate her sister from the squad car by physically pushing against her, and then by pulling her hair. Sixth, one of the officers observed that just prior to the assault, Shawn appeared increasingly impatient with the situation at the hospital. Lastly, Marsha was screaming profanities when LaTray approached her, and LaTray further recounted hearing Shawn yelling in the background immediately preceding the assault. The LaTrays also presented expert testimony that, in view of the aforementioned facts, the officers should have known that Shawn presented a foreseeable risk of harm to bystanders.

¶33 The evidence in this case amply raises a jury question. Based on the record, reasonable jurors clearly could differ as to whether Shawn presented a foreseeable risk of injury to persons in her immediate vicinity, including LaTray. We hold that the District Court erred in granting summary judgment. There are contested issues of material fact which preclude the granting of judgment as a matter of law. Where, as here, the facts of a given case suggest that the intervening criminal act of a third party is one which the defendant might reasonably foresee, " 'then there is no reason why the fact finder should not decide causation the same as with any other intervening causation case.' " *Starkenburg*, 282 Mont. at 10, 934 P.2d at 1023 (quoting *Estate of Strever*, 278 Mont. at 178, 924 P.2d at 674).

¶34 **(2) Should the trial of this case be moved to another county on remand?**

¶35 The LaTrays filed this case in Hill County because it is the sole place of proper venue pursuant to § 25-2-126(3), MCA(1997). Although the first trial of this case resulted in a jury verdict for the City, the then-presiding judge ordered a new trial because he concluded that the initial verdict had been tainted by the jury's exposure to media publicity

during the trial. Both during and after the first trial, there were several newspaper articles and radio news reports in Havre concerning the legal dispute between the City and the LaTrays. The replacement judge in this case denied the LaTrays' motion for a change of venue on retrial. We review a district court's ruling on a motion for change of venue for an abuse of discretion. Mannix v. Butte Water Co. (1993), 259 Mont. 79, 89, 854 P.2d 834, 840.

¶36 Under § 25-2-201, MCA, a change of venue is required "when there is reason to believe that an impartial trial cannot be had" in the current venue. Section 25-2-201(2), MCA. Due to the "widespread publicity" concerning the trial in Hill County, the LaTrays claim that this Court should order a change of venue on remand to protect the impartiality of the jury and the fairness of the proceedings on retrial. However, the LaTrays concede that the media coverage of this trial has been "balanced and factual," rather than "biased or inflammatory."

¶37 As the City argues, a party seeking a change of venue on the grounds of prejudicial pre-trial publicity must prove two elements: (1) that the media publicity surrounding the case was inflammatory; and (2) that the publicity actually inflamed the prejudice of the community to the extent that a reasonable possibility exists that the party will not receive a fair trial. State v. Fuhrmann (1996), 278 Mont. 396, 409, 925 P.2d 1162, 1170 (citing State v. Ritchson (1982), 199 Mont. 51, 54, 647 P.2d 830, 832). Moreover, inflammatory publicity consists of " 'editorializing on the part of the media or any calculated attempt to prejudice public opinion . . . .' " *Fuhrmann*, 278 Mont. at 409, 925 P.2d at 1170 (quoting State v. Nichols (1987), 225 Mont. 438, 444, 734 P.2d 170, 173-74). However, news accounts containing factual reports of court filings or events, which are " 'devoid of editorializing,' " do not rise to the level of inflammatory publicity, even where the reports contain information unfavorable to the party seeking the change of venue. *See Fuhrmann*, 278 Mont. at 410, 925 P.2d at 1170-71.

¶38 The LaTrays' speculative attempt to create the appearance of impropriety on the basis of balanced and factual pre-trial publicity does not amount to a "showing that there are reasonable grounds to believe that prejudice actually exists which creates a reasonable apprehension that a fair and impartial trial cannot be held in the current venue." *Mannix*, 259 Mont. at 88-89, 854 P.2d at 840 (citing State v. Pease (1987), 227 Mont. 424, 432, 740 P.2d 659, 664). We hold, therefore, that the District Court did not abuse its discretion in denying the LaTrays' motion for change of venue on retrial.

¶39 The District Court's grant of summary judgment in favor of the City is reversed, and this case is remanded for a new trial. The District Court's denial of the LaTrays' motion for change of venue is affirmed.

¶40 Reversed and remanded

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

Justice W. William Leaphart, specially concurring.

¶41 I concur with the Court's analysis on the question of legal duty and the question of proper venue. I specially concur that the District Court should have granted summary judgment on the question of whether the incident was foreseeable in the context of causation.

¶42 The Court employs two rationales for its conclusion that summary judgment was inappropriate as to whether there was foreseeability as to causation: (1) summary judgment is inappropriate where the credibility of a defendant's affiant may be crucial to adjudication of a material fact, and (2) the evidence in the record raises questions of fact as to whether Shawn presented a foreseeable risk of injury to third persons. I agree with the Court's conclusion that there was "sufficient evidence of Shawn's irascible conduct on the day in question to raise a jury question as to whether Shawn posed a danger to those around her." That rationale is more than a sufficient basis for denying summary judgment and the Court need go no further.

¶43 For the reasons set forth in my dissenting and concurring opinion in Mickelson v. Montana Rail Link, Inc., 2000 Mont. 111, I disagree with the broad proposition that, any time a party's motion for summary judgment is dependent upon the veracity of that party's affiant, summary judgment is inappropriate. As I state in *Mickelson*, unless the party opposing summary judgment can raises an issue as to a material fact, summary judgment is appropriate. Summary judgment cannot be defeated (as in *Mickelson*) by raising a question as to credibility on a non-material, extraneous fact nor by merely assuming,

without any basis for doing so, that affiant's unchallenged testimony is, or may be, false.

/S/ W. WILLIAM LEAPHART

Chief Justice J. A. Turnage joins in the foregoing special concurrence.

/S/ J. A. TURNAGE