FILED

June 10 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0552

DA 14-0552

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 158

MONIQUE LAY,

      Plaintiff and Appellant,

  v.

STATE OF MONTANA DEPARTMENT OF
MILITARY AFFAIRS, DISASTER AND
EMERGENCY SERVICES DIVISION,
JOHN WALSH, ERV KENT, ED TINSLEY,
PAUL GRIMSTAD, and JESSICA DAVIES,

      Defendants and Appellees.

APPEAL FROM:     District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. DDV 2013-20
                    Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Palmer A. Hoovestal, Hoovestal Law Firm, PLLC, Helena, Montana

        For Appellees:

                Trevor L. Uffelman, Uffelman Law, PC, Helena, Montana

                Curt Drake, Drake Law Firm, P.C., Helena, Montana

                                Submitted on Briefs: April 15, 2015
                                        Decided: June 10, 2015

Filed:

_____
                                  Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Monique Lay (Lay) appeals from the order entered by the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of the State of Montana Department of Military Affairs, Disaster and Emergency Services Division, John Walsh, Erv Kent, Ed Tinsley, Paul Grimstad, and Jessica Davies (collectively, the Defendants) on Lay's claims alleging various torts. Lay appeals the District Court's conclusion that her claims were time-barred under the Montana Human Rights Act. We affirm.

¶2 We address the following issue on appeal:

¶3 *Did the District Court err by concluding that Lay's claims were time-barred as a matter of law under the Montana Human Rights Act?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On January 11, 2012, Lay's position as public information officer for the Emergency Services Division (Division) of the State of Montana Department of Military Affairs was eliminated during implementation of the Division's reduction-in-force (RIF) policy. After elimination of her position, Lay filed a grievance with the Department of Labor and Industry Hearings Bureau (Bureau) in accordance with the State of Montana's grievance procedure.

¶5 Lay alleged the Division terminated her in retaliation for her complaint that sexual favoritism[1] had occurred within the Division. Specifically, Lay contended she was discharged because she had complained that another Division employee, Jessica Davies,

---

[1] Sexual favoritism is defined generally to denote the situation where "a supervisor grants benefits and/or promotions to an employee with whom he or she is having a sexual and/or romantic relationship, and in turn denies these benefits and/or promotions to qualified third-party employees." Mary Kate Sheridan, Article, *Just Because It's Sex Doesn't Mean It's Because of Sex: The Need for New Legislation to Target Sexual Favoritism*, 40 Colum. J.L. & Soc. Probs. 379, 383 (2007).

received favorable treatment for engaging in a sexual relationship with Division supervisor, Paul Grimstad. On March 21, 2012, the Bureau conducted a hearing on Lay's claims and thereafter dismissed Lay's complaint, concluding that the Division terminated Lay solely for business reasons related to the RIF. The Bureau informed Lay she could appeal to district court. However, Lay chose not to appeal.

¶6 Instead, Lay filed a discrimination complaint with the Montana Human Rights Bureau of the Department of Labor and Industry (Department) in which she restated her allegations of sexual favoritism and retaliation. A Department officer conducted an investigation into Lay's complaint, and on August 13, 2012, the Department issued a decision order concluding that Lay's allegations were not supported by a preponderance of the evidence. In its written decision dismissing the complaint, the Department informed Lay that, if she wished to pursue her claim in district court, she had 90 days under the Montana Human Rights Act to commence a civil action. Lay did not do so.

¶7 On January 9, 2013, Lay filed the present action in the First Judicial District Court. Lay's complaint alleged causes of action titled as follows: "Count 1: Conspiracy to Violate Constitutional Rights"; "Count 2: State Constitutional Rights Deprivation"; "Count 3: *Monell* Claim"; "Count 4: Wrongful Discharge"; and "Count 5: Attorneys Fees." After both parties moved for summary judgment, the District Court granted summary judgment in favor of the Defendants, concluding Lay's claims were time-barred as a matter of law under the Montana Human Rights Act. The court reasoned the Montana Human Rights Act provided the exclusive remedy for Lay's claims because, while Lay had attempted to re-characterize her claims within her complaint, the gravamen of her claims remained sexual favoritism and retaliation. The court determined

3

that Lay was required to pursue these claims under the procedures provided in the Montana Human Rights Act, including the requirement that a party file a complaint in district court within 90 days of the Department's decision.

¶8 Lay appeals.

## STANDARD OF REVIEW

¶9 We review orders of summary judgment de novo, applying the same criteria used by the district court pursuant to M. R. Civ. P. 56. *LaTray v. City of Havre*, 2000 MT 119, ¶ 14, 299 Mont. 449, 999 P.2d 1010. Summary judgment is only appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c).

¶10 The party seeking summary judgment bears the initial burden of establishing an absence of genuine issues of material fact. *LaTray*, ¶ 14. If the moving party satisfies this initial burden, then the burden shifts to the non-moving party to set forth specific facts, not merely denials, speculation, or conclusory statements, in order to establish that a genuine issue of material fact does indeed exist. *LaTray*, ¶ 14.

## DISCUSSION

¶11 *Did the District Court err by concluding that Lay's claims were time-barred as a matter of law under the Montana Human Rights Act?*

¶12 The Montana Human Rights Act (MHRA), codified in Title 49 of the Montana Code, protects the right of an employee to "hold employment without discrimination." Section 49-1-102(1), MCA. The MHRA declares that it is an "unlawful discriminatory practice" for an employer "to discriminate against a person in compensation or in a term,

4

condition, or privilege of employment because of . . . sex when the reasonable demands of the position do not require" such a distinction. Section 49-2-303(1), MCA. The MHRA further prohibits any governmental entity from discharging or "otherwise discriminat[ing] against an individual because the individual has opposed" unlawful discrimination. Section 49-2-301, MCA. If an employee complains of "acts constituting an alleged violation" of the MHRA, the MHRA provides the "exclusive remedy," and the employee must seek redress in conformance with the procedures set forth in the MHRA. Section 49-2-512(1), MCA. The MHRA is explicit that a "claim or request for relief based upon the acts may not be entertained by a district court other than by the procedures specified in [the MHRA]." Section 49-2-512(1), MCA. If the charging party's complaint is dismissed by the Department, the party is permitted to "commence a civil action for appropriate relief on the merits of the case in the district court in the district in which the alleged violation occurred." Section 49-2-512(3), MCA. However, if "the charging party fails to commence a civil action within 90 days after the dismissal has been issued, the claim is barred." Section 49-2-512(3), MCA.

¶13 Lay argues that, despite her failure to commence a civil action in district court within 90 days following the Department's decision, her claims are not time-barred because the MHRA is inapplicable to her claims. Lay contends her claims are not based on allegations of discrimination or retaliation in employment. Lay argues that "the heart" of her complaint is a violation of constitutional due process of law. She asserts the Division violated her right to due process when it failed "to consider her skills, qualifications, experience, performance, and length of continuous service" prior to her termination, as required under the RIF policy.

¶14 The Division counters the "core of [Lay's] case is an allegation that she was retaliated against for objecting to the opportunities afforded to a colleague in exchange for sex," and that "such a claim 'may not be entertained by a district court' without following the procedures" outlined in the Montana Human Rights Act. The Division argues "the law is clear that [Lay] had an avenue for pursuing her claim, and cannot now file a lawsuit under different legal theories to circumvent those provided procedures."

¶15 This Court is no stranger to attempts to characterize a claim in such a way so as to avoid the exclusive procedures set forth in the MHRA.[2] *See Edwards v. Cascade Cnty Sheriff's Dep't*, 2009 MT 451, 354 Mont. 307, 223 P.3d 893; *Vettel-Becker v. Deaconess Med. Ctr. of Billings, Inc.*, 2008 MT 51, 341 Mont. 435, 177 P.3d 1034; *Saucier v. McDonald's Rests. of Mont., Inc.*, 2008 MT 63, 342 Mont. 29, 179 P.3d 481; *Arthur v. Pierre Ltd.*, 2004 MT 303, 323 Mont. 453, 100 P.3d 987; *Shields v. Helena Sch. Dist. No. 1*, 284 Mont. 138, 943 P.2d 999 (1997); *Bruner v. Yellowstone Cnty*, 272 Mont. 261, 900 P.2d 901 (1995); *Fandrich v. Capital Ford Lincoln Mercury*, 272 Mont. 425, 901 P.2d 112 (1995); *Harrison v. Chance*, 244 Mont. 215, 797 P.2d 200 (1990). In determining whether the MHRA is applicable, we look to the gravamen of the party's complaint, as opposed to the party's characterization of her claims. *Saucier*, ¶ 56. We have recognized that "litigants can frequently employ tort terminology to improperly re-characterize" what is at the heart of their complaint, *Saucier*, ¶ 56 (citing *Harrison*, 244 Mont. at 223, 797 P.2d at 205; *Arthur*, ¶¶ 25-27), and that permitting a party to bypass the MHRA's procedures in so doing "would be to eviscerate the mandate" of the

---

[2] This has become less frequent since the Legislature's revision of the MHRA in 2007. *See Griffith v. Butte Sch. Dist. No. 1*, 2010 MT 246, 358 Mont. 193, 244 P.3d 321 (discussing effects of the 2007 revisions to the MHRA).

MHRA, requiring that it provide the exclusive remedy for acts constituting violations thereof. *Harrison*, 244 Mont. at 223, 797 P.2d at 205. Thus, we undertake a gravamen analysis in which we focus on the "nature of the alleged conduct." *Saucier*, ¶ 57.

¶16 At the outset, we note that the parties do not contest the District Court's determination that sexual favoritism is unlawful sex discrimination. As noted above, while retaliation is prohibited by the MHRA, the retaliation must be in response to unlawful discrimination in order to necessitate the applicability of the MHRA procedures. Section 49-2-301, MCA. Given the posture of this case, we assume, without deciding, that sexual favoritism is unlawful discrimination based on sex. It is well established that it is "not this Court's obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal." *Cutler v. Jim Gilman Excavating, Inc.*, 2003 MT 314, ¶ 22, 318 Mont. 255, 80 P.3d 1203 (citing *In re B.P.*, 2001 MT 219, ¶ 41, 306 Mont. 430, 35 P.3d 291). We recognize the issue of whether, and in what circumstances, sexual favoritism may constitute sex-based discrimination has divided federal and state courts, contributing to much scholarly debate. *See* Meghan E. Bass, Note, *Dangerous Liaisons: Paramour No More*, 41 Val. U.L. Rev. 303, 324 (2006) (describing the issue as an "expansive judicial battleground"); Susan J. Best, Comment, *Sexual Favoritism: A Cause of Action Under a 'Sex-Plus' Theory*, 30 N. Ill. U.L. Rev. 211, 224 (2009) (discussing the "split among the federal circuits on whether widespread sexual favoritism is a cause of action under the hostile work environment theory of sexual harassment"); Paige I. Bernick, Article, *You're Sending the Wrong Message: Sexual Favoritism and the Workplace*, 7-1 Tenn. J. L. & Pol'y 141, 145 (2011) (discussing the "divergent views on sexual favoritism").

¶17     On that assumption, we conclude that Lay's claims are subject to the MHRA.  The gravamen of the complaint is the factual allegation that Lay's employment was terminated because she objected to Davies receiving favorable treatment for engaging in a sexual relationship with Grimstad.  Although Lay couches her claims in terms of the RIF policy, her complaint is premised entirely on an allegation of sexual favoritism and her employer's retaliation for her objection to the practice.  Lay admits as much in the complaint, stating she "was discriminated and retaliated against *solely* because she objected to Grimstad's improper relationship with Davies and the overt favoritism that was being showed to Davies by Grimstad."  (Emphasis added.)  Lay's allegations of discrimination and retaliation are repeated throughout her complaint, which provides: (1) the "Defendants unlawfully discriminated and retaliated against Lay by laying her off" after she "complained about favoritism that Grimstad was affording to Davies in exchange for sex"; (2) Lay's employment was "taken in retaliation for Lay's complaint about the favoritism that Grimstad was providing to Davies in exchange for sexual favors, and Lay's testimony in the ensuing investigation"; and (3) the Defendants "deliberately and intentionally eliminated Lay's position under the pretext of a reorganization and reduction-in-force with the specific purpose of forcing Lay" out of the Division "in retaliation for [her] complaints about the favoritism."  Lay's allegations of sexual favoritism and retaliation are, in fact, the only allegations contained in the complaint.  If these allegations were removed from the complaint, Lay would have no actionable claim of any kind.  Because the gravamen of the complaint is an allegation that the Division terminated Lay in retaliation for her objection to sexual favoritism in

8

employment, the District Court did not err by holding that Lay's claims were subject to the procedures set forth in the MHRA, and as a result were time-barred.

¶18 We affirm the District Court's entry of summary judgment in favor of the Defendants.[3]

/S/ JIM RICE

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON

---

[3] The District Court also determined that Lay could not recover separately under the Montana Wrongful Discharge From Employment Act, § 39-2-901, MCA, et seq. Lay makes a passing reference to the court's determination in a single sentence, stating: "Nowhere in the causes of action alleged under *Dorwart*, *Monell*, or the Wrongful Discharge Act is there any kind of requirement that Lay go through the procedures identified in the Human Rights Act, or which provide that § 49-2-512, MCA constitutes the 'exclusive remedy' for the civil rights violations visited upon her as complained in this case." As we explained above, it is not this Court's obligation to develop arguments for a party on appeal. *Cutler*, ¶ 22. Nonetheless, with respect to the Montana Wrongful Discharge From Employment Act, we have previously concluded that if the plaintiff's claim is properly subject to the MHRA, the plaintiff cannot currently file under the Montana Wrongful Discharge From Employment Act. *See Fandrich v. Capital Ford Lincoln Mercury*, 272 Mont. 425, 432, 901 P.2d 112, 116 (1995) (where the plaintiff was "barred from bringing his claim pursuant to the Montana Wrongful Discharge From Employment Act because the Human Rights Act provide[d] his exclusive remedy").