DA 10-0486

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 229

GAIL A. SHATTUCK, Individually
and as Personal Representative for
the ESTATE OF DANE M. SHATTUCK,
and on Behalf of Others Similarly Situated,

Plaintiffs, Appellees and Cross-Appellants,

v.

KALISPELL REGIONAL MEDICAL CENTER, INC.,
a Montana Corporation and BLUE CROSS AND
BLUE SHIELD OF MONTANA, INC.,
a Montana Corporation, STATE OF MONTANA,
DEPARTMENT OF PUBLIC HEALTH AND
HUMAN SERVICES, and DOES 1 to 99,

Defendants and Appellants.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark County, Cause No. ADV 08-53
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Geralyn J. Driscoll (argued), Special Assistant Attorney General; Office of
Legal Affairs; Helena, Montana
Robert C. Lukes; Garlington, Lohn & Robinson, PLLP; Missoula,
Montana (Attorneys for State of Montana, Department of Public Health
and Human Services)

Jacqueline T. Lenmark (argued); Keller, Reynolds, Drake, Johnson
& Gillespie, P.C.; Helena, Montana
(Attorney for Blue Cross and Blue Shield of Montana, Inc.)

Sean M. Morris; Worden Thane, P.C.; Missoula, Montana
(Attorney for Kalispell Regional Medical Center, Inc.)

For Appellees and Cross-Appellants:

    Alan Jay Lerner (argued), Linda C. Semrow; Lerner Law Firm; Kalispell, Montana

    Michael A. Viscomi, Judah M. Gersh; Viscomi & Gersh; Whitefish, Montana

Argued and Submitted:  August 12, 2011

Decided:  September 14, 2011

Filed:

_____
                     Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Defendants Kalispell Regional Medical Center (KRMC), Blue Cross and Blue Shield of Montana (BCBSMT), and State of Montana, Department of Public Health and Human Services (DPHHS) appeal from the Order of the First Judicial District Court, Lewis and Clark County, granting summary judgment, in part, to Plaintiff Gail A. Shattuck, who brought this action individually and as Personal Representative of the Estate of Dane M. Shattuck (Shattuck). Defendants appeal from the District Court's holding that the Children's Health Insurance Program, commonly known as CHIP, constitutes insurance and is subject to the "made whole" statute. Shattuck cross appeals the District Court's further determination that BCBSMT is not an "insurer" in its role here and therefore not subject to the "made whole" statute. The appeal arises from the District Court's certification of its ruling as a final judgment, which we approved by order on October 19, 2010. We reverse in part, affirm in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In July 2007, Dane Shattuck, a minor, tragically died from injuries sustained after being hit by an automobile driven by a third-party tortfeasor. Dane received medical care at KRMC for his injuries, which were billed in the amount of $2,365.75. At the time of his injuries and death, Dane was enrolled in CHIP, administered by DPHHS. KRMC was a CHIP hospital provider and submitted the bill for Dane's care to BCBSMT, which served as third-party administrator (TPA) of the CHIP program for DPHHS. Pursuant to

3

the payment terms of the provider agreement, KRMC was paid the sum of $2,005.85 from CHIP through BCBSMT.[1]

¶3      Pursuant to §§ 71-3-1111, et seq., MCA, KRMC asserted a health care provider lien for the amount of $2,365.75 against recoveries Shattuck may obtain against responsible third parties. Dane's estate recovered $100,000 in automobile insurance proceeds for damages associated with Dane's injuries and death.[2] Shattuck took the position that KRMC's lien was unnecessary because CHIP had paid the bill in full and requested KRMC release the lien. KRMC contended that because BCBSMT had the authority to adjust overpayment charges on claims, including claims involving third-party tortfeasors, it could not release its lien without jeopardizing payment for its services, and thus had no choice but to pursue its lien. In January 2008, Shattuck commenced an action against KRMC and BCBSMT challenging the lien's validity. Shattuck alleged breach of contract, wrongful assertion of an invalid lien, constructive fraud, deceit, conspiracy, tortious breach of the implied covenant of good faith and fair dealing, conversion, and actual fraud, and sought release of KRMC's lien, interest, general and punitive damages, and attorney fees.[3] Shattuck asserted that the Defendants unlawfully acted to avoid application of common law and statutory "made whole" rules. She argued

---

[1] The District Court noted that Shattuck paid a $4.25 co-payment on KRMC's charges.

[2] Shattuck's briefing indicates that a highway design claim was also recently settled for the sum of $55,000.

[3] Shattuck also requested that the matter be certified as a class action, seeking injunctive relief, compensatory damages, interest, punitive damages, and attorney fees. A class has not yet been certified.

4

that KRMC could not foreclose the lien because she had not been made whole.  As stated in Shattuck's complaint:

> The agreement between KRMC and Blue Cross (and other insurers and administrators) is designed to avoid the "made whole" requirements of Montana common law and statutes, including, but not limited to, Sections 2-18-902, 33-22-1602, and 33-20-1102, MCA.  The agreement resulted in a constructive fraud and deceit upon Shattuck designed to deprive her of the protection of Montana's "made whole" doctrine, by allowing health insurers and administrators, such as Blue Cross (and other insurers and administrators), to collect subrogation without the injured party first being fully compensated and "made whole" for his or her injuries."

KRMC filed a motion for summary judgment, arguing that CHIP was not insurance and BCBSMT was not an insurer, with which BCBSMT joined.  The District Court ruled that CHIP constitutes insurance and was subject to the "made whole" statute, reasoning, in part, that the Montana Insurance Code "attempts to be inclusive of numerous kinds of insurance and plans, expressly excluding those programs not to be included. . . .  CHIP is not expressly excluded."  However, the court also determined that BCBSMT was not an insurer.  Both KRMC and BCBSMT moved to certify the order as final pursuant to M. R. Civ. P. 54(b), which was granted by the District Court.

¶4    Prior to the court's certification, Shattuck filed an amended complaint naming DPHHS as an additional defendant.  DPHHS appeared on March 16, 2010, and moved to vacate the Rule 54(b) certification.  On March 19, 2010, BCBSMT and KRMC filed a joint appeal from the certified order to this Court.  Shattuck moved to dismiss the appeal, and DPHHS moved to remand the appeal to permit an opportunity for DPHHS to present evidence and argument to the District Court on the issue of CHIP's status as insurance.

5

In April 2010, this Court dismissed the appeal without prejudice and remanded the matter to the District Court for that purpose.

¶5    On remand, DPHHS sought reconsideration of the District Court's ruling on CHIP, but on August 30, 2010, the District Court issued an order reaffirming its earlier determination that CHIP was insurance. The District Court again granted Rule 54(b) certification, and DPHHS filed an appeal to this Court, which was joined by BCBSMT and KRMC. This Court determined that the Rule 54(b) certification was sufficient and permitted this appeal to proceed. We designated the issues as "whether the Montana Children's Health Insurance Plan (CHIP) is an insurance covered by the 'made whole' doctrine codified in the Montana Insurance Code and whether Blue Cross Blue Shield of Montana, as administrator of CHIP, is an 'insurer' for purposes of this lawsuit," reasoning that these issues were of statewide importance that merited prompt and final resolution. Shattuck then filed a notice of cross appeal "from that part of the Orders at issue in this appeal that hold that [BCBSMT] is not an 'insurer' for purposes of the 'made-whole' rule, either as an insurance company or as an administrator." KRMC and BCBSMT moved to dismiss the cross appeal, which we denied. Therefore, the two issues on appeal to this Court which have been certified, pursuant to M. R. Civ. P. 54(b), are:

¶6    *Issue 1:  Did the District Court err by concluding that CHIP constitutes insurance subject to the "made whole" provision of the Montana Insurance Code?*

6

¶7     *Issue 2: Did the District Court err by concluding that BCBSMT, in its capacity as third-party administrator of CHIP, is not an "insurer" for purposes of the "made whole" rule?*[4]

**STANDARD OF REVIEW**

¶8     "We review summary judgment rulings de novo, applying the same M. R. Civ. P. 56 criteria as the district court." *Gaston Eng'g & Surveying, P.C. v. Oakwood Props., LLC*, 2011 MT 44, ¶ 11, 359 Mont. 341, 249 P.3d 75. "The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact." *Hern v. Safeco Ins. Co. of Ill.*, 2005 MT 301, ¶ 18, 329 Mont. 347, 125 P.3d 597. The evidence must be analyzed in the most favorable light to the non-moving party, and all reasonable inferences are to be drawn in favor of the non-moving party. *Gaston*, ¶ 11. "We review a district court's conclusions of law for correctness." *Gaston*, ¶ 11.

**DISCUSSION**

¶9     *Issue 1: Did the District Court err by concluding that CHIP constitutes insurance subject to the "made whole" provision of the Montana Insurance Code?*

---

[4] Several procedural questions were raised or argued in the briefing and at oral argument regarding the standing of the parties and the ripeness of the issues. The validity of KRMC's provider lien, addressed in a prior order of the District Court, was also argued in the briefing. Given the posture of this appeal as a certified final order for which we have designated the issues to be addressed and given that remand is ordered, we decline to undertake consideration of those questions at this time.

¶10    CHIP is a joint federal and state government-funded program to provide health care to qualifying low-income children.[5]  "Title XXI of the Social Security Act, enacted in 1997 by the Balanced Budget Act, authorizes Federal grants to States for provision of child health assistance to uninsured, low-income children.  The program is jointly financed by the Federal and State governments and administered by the States.  Within broad Federal rules, each State decides eligible groups, types and ranges of services, payment levels for benefit coverage, and administrative and operating procedures."  42 C.F.R. § 457.1 (2006); *see generally* 42 U.S.C. §§ 1397aa-jj (2006).[6]  According to federal law, the purpose of the state CHIP programs "is to provide funds to States to enable them to initiate and expand the provision of child health assistance to uninsured, low-income children in an effective and efficient manner that is coordinated with other sources of health benefits coverage for children."  42 U.S.C. § 1397aa(a).  Federal funds cannot be received until a State submits a plan setting forth how the State intends to use the funds consistent with federal regulations, and only after such a plan has been approved.  42 U.S.C. § 1397aa(b); *see also* 42 U.S.C. § 1397bb.  Approval is given by the U.S. Department of Health and Human Services through its Centers for Medicare and Medicaid Services (CMS).  42 C.F.R. § 457.50 ("The State plan is a comprehensive

---

[5] DPHHS notes that in November 2008, voter Initiative 155 was approved, which expanded CHIP eligibility to a greater number of uninsured, low-income children; coordinated and consolidated CHIP and Montana children's Medicaid; and renamed the program Healthy Montana Kids Plan (HMK).  *See* Title 53, Chapter 4, Part 11, MCA (2009).  Montana HMK now includes the state public assistance programs, Montana children's Medicaid, and Montana CHIP.  *See* § 53-4-1104(2), MCA (2009).  However, because Dane was enrolled in CHIP, not HMK, at the time of his death in 2007, our analysis herein pertains to CHIP.

[6] All references to the federal statutes and regulations will be to the 2006 version, unless otherwise indicated.

8

written statement, submitted by the State to CMS for approval . . . . The State plan contains all information necessary for CMS to determine whether the plan can be approved to serve as a basis for Federal financial participation (FFP) in the State Program.") State participation in the CHIP program is voluntary. Montana has chosen to participate in the CHIP program, and the Montana state plan has been approved by CMS.

¶11 The Montana Department of Public Health and Human Services is the state agency responsible for establishing and administering the CHIP program in Montana. Section 53-4-1003, MCA (2005)[7]. DPHHS "may establish, administer, and monitor a program to provide health care to uninsured children." Section 53-4-1003, MCA; *see generally* Title 53, Chapter 4, Part 10, MCA. CHIP is a statutorily created program with the purpose "to provide health care to children who are not eligible for health care services under the Montana medicaid program." Section 53-4-1002(1), MCA. To be qualified for the CHIP program at the time of Dane's death in July of 2007, a child must have been 18 years of age or younger, have had a combined family income at or below 150% of the federal poverty level or at a lower level determined by DPHHS, may not have been already covered by private insurance offering creditable coverage, may not have been eligible for Medicaid benefits, and must have been a United States citizen or qualified alien and a Montana resident. Section 53-4-1004(1), MCA.

¶12 DPHHS, BCBSMT, and KRMC argue that CHIP is not insurance because it is a legislatively provided public assistance program. Shattuck responds that CHIP

---

[7] Because Dane's injury occurred in July 2007, the 2005 MCA was in effect. All subsequent references herein to the MCA will be to the 2005 version, unless otherwise indicated.

9

constitutes disability insurance under Montana statute, and that it is "factually" insurance based upon statute and interdepartmental and public statements made about the program.

¶13 Insurance and insurance companies are governed by Title 33 of the Montana Code Annotated. "'Insurance'" is defined as "a contract whereby one undertakes to indemnify another or pay or provide a specified or determinable amount or benefit upon determinable contingencies." Section 33-1-201(5)(a), MCA. "Indemnity" is defined by Montana statute as "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." Section 28-11-301, MCA. "'Insurer'" is defined as "every person engaged as indemnitor, surety, or contractor *in the business of entering into contracts of insurance.*" Section 33-1-201(6), MCA (emphasis added). Any person or entity desiring to act as an insurer must obtain a certificate of authority issued by the commissioner. Section 33-2-101(1), (3), MCA ("[A] person acting as an insurer and an insurer transacting insurance in this state must have a subsisting certificate of authority issued by the commissioner. . . . A person who knowingly violates this section is guilty of a felony . . . .").

¶14 DPHHS is an agency of state government established pursuant to § 2-15-2201, MCA. Undisputed evidence indicates that DPHHS does not have a certificate of authority from the insurance commissioner pursuant to § 33-2-101, MCA. DPHHS' duties include: to "administer and supervise public assistance," "assist and cooperate with other state and federal departments . . . by performing services in conformity with public assistance purposes," and "administer all state and federal funds allocated to the

10

department for public assistance." Section 53-2-201(1)(a),(e),(f) MCA. DPHHS has been granted authority to "make rules, consistent with state and federal law, establishing the amount, scope, and duration of services to be provided to recipients of public assistance." Section 53-2-201(2)(c), MCA. "'Public assistance'" is defined as "a type of monetary or other assistance furnished under this title [Title 53] to a person by a state or county agency, regardless of the original source of the assistance." Section 53-4-201(10), MCA (effective July 1, 2006). These provisions illustrate that DPHHS' duties pertain to the provision of public assistance, as opposed to "engag[ing] . . . in the business of entering into contracts of insurance." Section 33-1-201(6), MCA.

¶15    We have noted that "[t]he legislature enacted the Montana Insurance Code, Title 33, MCA, to govern and regulate the business of insurance." *Ogden v. Mont. Power Co.*, 229 Mont. 387, 392, 747 P.2d 201, 204 (1987). In *Ogden*, we determined that Montana Power Company was not in the business of insurance because it was "primarily in the business of providing power and utilities to customers, although it insures itself." *Ogden*, 229 Mont. at 393, 747 P.2d at 205. Similarly, as a general matter, the "business" of DPHHS is to provide public assistance, not to enter into insurance contracts.

¶16    Defendants cite to *Thayer v. Uninsured Employers' Fund*, 1999 MT 304, 297 Mont. 179, 991 P.2d 447, for its analysis of subrogation and the made whole doctrine in the context of a legislatively provided benefit. In *Thayer*, the Plaintiff Phyllis Thayer's husband, Gerald, died from injuries received in an employment-related accident, and Phyllis received medical and survivor death benefits related to Gerald's accident from the

11

Uninsured Employers' Fund (UEF). *Thayer*, ¶¶ 5-6. Subsequently, Phyllis recovered settlements from defendants responsible for the damages caused by Gerald's injuries and death. *Thayer*, ¶¶ 8-9. Due to that recovery, the UEF advised Phyllis that she was no longer entitled to future survivor benefits from the Fund. *Thayer*, ¶ 10. Phyllis then brought an action challenging the UEF's termination of benefits, arguing that the UEF could not assert a subrogation interest in her settlement until she had been made whole. *Thayer*, ¶¶ 11, 16. On appeal, we rejected Phyllis' argument, holding the UEF was "not an insurer and has not been paid premiums" by Gerald's employer "to assume the risk of any loss." *Thayer*, ¶ 21. We explained that "[t]he Fund is a legislatively provided source from which to minimize the hardships imposed when an injured worker is unable to get workers' compensation benefits as a result of the employer's failure to provide coverage." *Thayer*, ¶ 21. We noted that the statutes creating the UEF provided that UEF claimants "are not guaranteed full payment of benefits . . . ." *Thayer*, ¶ 21 (citing § 39-71-510, MCA). Importantly, for purposes of this case, we distinguished the UEF from an insurer:

> Moreover, the statutory scheme of the Uninsured Employers' Fund requires that we treat the Fund differently than an insurer. Payments from the Fund are dependent upon the Fund's ability to pay claims. The legislature has directed the Fund to pay claims to the best of its ability and to make proportional reductions to all Fund claimants when the present funds are inadequate to pay all claims. *See* § 39-71-510, MCA. The setoff provisions contained in § 39-71-511, MCA, are uniquely necessary to assure some payment to as many uninsured employees as possible.

*Thayer*, ¶ 22. Reasoning that the UEF "is merely a safety net and stands in the place of the employer," this Court affirmed the Workers' Compensation Court's conclusion that the termination of Phyllis' future survivor benefits was proper. *Thayer*, ¶ 24.

¶17 As a legislatively provided benefit by which hardships on low-income, uninsured children without access to health care are minimized, CHIP serves purposes similar to those we noted with regard to the UEF in *Thayer*. Since the program's inception, CHIP enrollees have never paid premiums to DPHHS to assume the risk of loss for health coverage, similar to the absence of any premiums paid by uninsured employers for UEF to assume any loss in *Thayer*. Rather, CHIP is funded from federal and state funds.[8] Also like the UEF in *Thayer*, the statutory scheme creating CHIP provides that CHIP enrollees are not guaranteed payment of benefits. Under federal statute, "[n]othing in this subchapter [42 U.S.C. §§ 1397aa et seq.] shall be construed as providing an individual with an entitlement to child health assistance under a State child health plan." 42 U.S.C. § 1397bb(b)(4). Under state law, Admin. R. M. 37.79.201(9) (2007)[9] provides that "CHIP eligibility and benefits are not an entitlement. If funding is insufficient, the department may reduce enrollment numbers or reduce eligibility to a lower percentage of the federal poverty level to limit the number of individuals who are eligible to participate." DPHHS is also authorized to reduce benefit levels for those it deems

---

[8] According to evidence submitted to the District Court, federal CHIP funds are capped, and each state receives an allotment. From October 1, 2006, to September 30, 2007, federal financial participation in the Montana program was approximately $18,241,019. State funds appropriated by the Montana Legislature for the program was approximately $5,031,524.

[9] Admin. R. M. 37.79.201(9) (2007) is substantially similar to Admin. R. M. 37.79.201(11) (2009), which repeats the non-entitlement language in the context of HMK, instead of CHIP.

eligible: "If the department determines that there is insufficient funding for the program, it may . . . limit the amount, scope, or duration of specific services provided." Section 53-4-1004(4), MCA.

¶18 Further, since first passed in 1999, the authorizing legislation for CHIP has contained a contingent provision which terminates the program upon loss of federal funding. Laws of Montana, 1999, ch. 571, § 15, at 2555 (the act "terminates on the date that the director of the department of public health and human services certifies to the governor that the federal government has terminated the program or that federal funding for the program has been discontinued"). Thus, similar to the UEF in *Thayer*, CHIP eligibility and benefits are dependent upon the availability of funding for DPHHS to pay claims. Equally applicable here is *Thayer*'s statement that "[t]he legislature has directed the Fund to pay claims to the best of its ability and to make proportional reductions to all Fund claimants when the present funds are inadequate to pay all claims." *Thayer*, ¶ 22; *see also* § 53-4-1004(4), MCA; Laws of Montana, 1999, ch. 571, § 15, at 2555.

¶19 Shattuck argues that *Thayer* is distinguishable because § 39-71-511, MCA, at issue in *Thayer*, required the offset of benefits from the UEF, whereas "[t]here is no statute similar to § 39-71-511, MCA, in CHIP."[10] However, while there is not a specific "offset" statute within CHIP's authorizing legislation, DPHHS is statutorily authorized to lien and collect from third-party recoveries obtained by recipients of public assistance. Section 53-2-612, -613, MCA; *see also Blanton v. Mont. Dept. of Pub. Health & Human*

_____

[10] The District Court did not analyze *Thayer* for the issues on appeal, although it discussed *Thayer* in an order addressing the validity of KRMC's provider lien.

14

*Servs.*, 2011 MT 110, ¶¶ 7, 14, 360 Mont. 396, 255 P.3d 1229. Moreover, similar to *Thayer*, there is an abundance of federal and state statutory authority which conditions the payment of CHIP benefits, and even the continuation of the very program, on the receipt of federal funding. DPHHS has been given broad authority to restrict eligibility and decrease services depending on existing financial support for the program. Further, *Thayer* relied on other factors—the lack of payment of premiums, the provision by the Legislature, and the need to assure coverage to as many claimants as possible—all of which are present here. The absence of the particular statute cited in *Thayer* does not minimize the application of *Thayer's* reasoning here.

¶20 Shattuck argues that CHIP is "factually" insurance due to the many references to "insurance" within the program's internal documentation and public advertising, and thus should also be deemed insurance as a matter of law. Shattuck correctly notes that the term "insurance" appears in the name of the CHIP program as well as in various statutes and public documents. *See e.g.* 42 U.S.C. § 1397bb(b)(3)(C) (emphasis added) ("The [State CHIP] plan shall include a description of procedures to be used to ensure . . . that the *insurance* provided under the State child health plan does not substitute for coverage under group health plans"); § 53-4-1001, MCA (emphasis added) ("This part may be cited as the 'Children's Health *Insurance* Program Act.'"). However, the term more frequently used in federal law is "child health assistance." *See e.g.* 42 U.S.C. § 1397aa; 42 U.S.C. § 1397bb(b)(1)(A); 42 U.S.C. § 1397bb(b)(3)(D); 42 U.S.C. § 1397bb(c)(1); 42 U.S.C. § 1397gg(a)(1); 42 U.S.C. § 1397jj(a). "'Child health assistance'" is defined

15

as "payment for part or all of the cost of health benefits coverage for targeted low-income children . . . ." 42 U.S.C. § 1397jj(a). State law also typically identifies the CHIP program as a "health care program." Sections 53-4-1002(1) ("[t]he purpose . . . is to create a program to provide health care to children"); 53-4-1003 (DPHHS may "establish, administer, and monitor a program to provide health care to uninsured children"); 53-4-1009(1), MCA (DPHHS "shall adopt rules necessary for the administration of the program"). DPHHS argues that the "casual use" of the word "insurance" does not create an insurer/insured relationship or constitute a legal conclusion, and we agree. The use of the term "insurance" does not necessarily make it so, as "[t]he law respects form less than substance." Section 1-3-219, MCA; *see also Epletveit v. Solberg*, 119 Mont. 45, 60, 169 P.2d 722, 730 (1946) ("Equity will not permit a mere form to conceal the real position and substantial rights of parties."). We conclude that CHIP is not "factually" insurance as contemplated by Title 33 of the Montana Code Annotated.

¶21 Therefore, based upon a review of the statutory provisions defining insurance and insurer, the statutes governing the CHIP program, and our applicable precedent, we conclude that CHIP does not constitute insurance under Montana law. While Shattuck urges us to hold that CHIP is disability insurance subject to the "made whole" provision of § 33-22-1602(4), MCA, "[d]isability insurance" is defined as "*insurance* of human beings: (a) against bodily injury, disablement, or death by accident or accidental means or the medical expense or indemnity involved; or (b) against disablement or medical expense or indemnity resulting from sickness." Section 33-1-207(1), MCA (emphasis

16

added). Given our conclusion that CHIP is not insurance, it necessarily follows that CHIP is not disability insurance and therefore not subject to the statutory "made whole" provision applicable to such insurance.

¶22 Shattuck argues, alternatively, that even if CHIP is not insurance, a "made whole" rule nonetheless applies pursuant to common law principles and Article II, Section 16 of the Montana Constitution. These issues were likewise raised and analyzed in *Thayer*. We began by surveying the line of our cases pertaining to the "made whole" doctrine, beginning with *Skauge v. Mountain States Telephone and Telegraph Co.*, 172 Mont. 521, 565 P.2d 628 (1977). In *Skauge*, we held that "when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor." *Skauge*, 172 Mont. at 528, 565 P.2d at 632. We explained that subrogation was "a device of equity which is designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it. . . . Subrogation is classified as legal or conventional; legal subrogation arises by operation of law, upon the fact of payment made by the insurer; whereas conventional subrogation arises by the contract of the parties." *Skauge*, 172 Mont. at 524-25, 565 P.2d at 630. We premised our "made whole" holding on the reasoning that, "'[w]hen the sum recovered by the Insured from the Tort-feasor is less than the total loss and thus either the Insured or the Insurer must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has

17

paid it to assume.'" *Skauge*, 172 Mont. at 528, 565 P.2d at 632 (citation and emphasis omitted); *Thayer*, ¶ 19. This reasoning for application of the made whole doctrine within the insurance context was later reiterated in *Zacher v. American Insurance Co.*, 243 Mont. 226, 794 P.2d 335 (1990) and *Ness v. Anaconda Minerals Co.*, 279 Mont. 472, 929 P.2d 205 (1996). *See also Swanson v. Hartford Insurance Co.*, 2002 MT 81, 309 Mont. 269, 46 P.3d 584.

¶23 We distinguished the subrogation and "made whole" principles of these cases in *Thayer*, reasoning that the holdings in *Ness*, *Zacher*, and *Skauge* did not apply because the UEF was not an insurer, was not paid premiums, and Fund claimants were not guaranteed full payment of benefits by statute. *Thayer*, ¶ 21. We then took up the claim that such a result would violate the right to full legal redress as set forth in Article II, Section 16 of the Montana Constitution. *Thayer*, ¶¶ 25, 28. Citing the Constitutional Convention minutes and our analysis of the issue in *Trankel v. Montana Department of Military Affairs*, 282 Mont. 348, 938 P.2d 614 (1997), we reasoned that because the UEF was not an insurer and was statutorily created to provide a substitute source of benefits to the employee of an uninsured employer, "§ 39-71-511, MCA, does not violate the right to full legal redress as set forth in Article II, Section 16 of the Montana Constitution." *Thayer*, ¶ 33. We reach the same conclusions with regard to the CHIP program. *See Thayer*, ¶¶ 21, 33; *see also Blanton*, ¶¶ 54-55 (the "made whole" common law doctrine was not implicated for a related public assistance program, Medicaid, because *Ark. Dept. of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 126 S. Ct. 1752 (2006) was

18

controlling (holding that states can only seek reimbursement of Medicaid expenses under third-party liability statutes from settlement proceeds representing compensation for medical expenses)). Shattuck has not presented arguments under either the common law or the Montana Constitution which require a different outcome here.

¶24 We conclude that the District Court erred by determining that the Montana Children's Health Insurance Program is "insurance" governed by the "made whole" doctrine.

¶25 *Issue 2: Did the District Court err by concluding that BCBSMT, in its capacity as third-party administrator of CHIP, is not an "insurer" for purposes of the "made whole" rule?*

¶26 On cross appeal, Shattuck contends the District Court erred and that "BCBSMT is an 'insurer' under CHIP or is otherwise obligated to comply with the 'made whole' rule." (Emphasis omitted.) Appellants argue that the District Court properly determined that BCBSMT was not an insurer.

¶27 Section 53-4-1007(2)(a), MCA, gives DPHHS the authority to "contract for a health care service based on a fee for service when the department does not contract for a health care service through an insurance plan, a health maintenance organization, or a managed care plan. In operating the program and providing health services, the department may . . . contract with an insurance company, third-party administrator, or other entity to provide administrative services, including but not limited to processing and payment of claims with program funds . . . ." As of October 2006, DPHHS

19

contracted with BCBSMT for third-party administrative services for the CHIP program.[11]

The effective contract between DPHHS and BCBSMT stated:

> The purpose of this contract is to purchase Third Party Administrative (TPA) services from the Contractor who is an authorized third party administrator with a valid certificate of authority issued by the Montana Commissioner of Insurance to transact business in the State of Montana. The Montana Children's Health Insurance Plan (hereinafter referred to as "CHIP") provides health coverage for low-income children who are not eligible for Medicaid and are not covered under a contract for health insurance. The Department determines eligibility based on state and federal laws, rules and regulations. . . .

> .   .   .   .   .

> (a)    It is understood and agreed that Contractor is not a "fiduciary" for the Plan and that such functions have been retained by the Department  . . . .

> .   .   .   .   .

> (c)    This Agreement is not a third-party beneficiary contract and shall not, in any manner whatsoever create or increase any rights of any Member or other third party with respect to the Plan or Contractor, nor shall this Agreement be deemed a contract of insurance under any laws or regulations. . . .
> (d)    Under this Agreement Contractor provides administrative claims payment services and does not assume any financial risk or obligation with respect to Claims.  Notwithstanding any provision of this Contract, the responsibility of Contractor with respect to the Plan shall be limited to the performance of the ministerial services described in this Contract within a framework of policies, interpretations, rules, practices, and procedures made by the Department.

Under this contract, BCBSMT performed only administrative services for the CHIP program.  Having already determined that CHIP is not insurance subject to Title 33, we

---

[11] Prior to October 2006, CHIP provided health care by purchasing insurance coverage from an insurance carrier (BCBSMT), and the State paid the premium.  However, beginning October 1, 2006, the State no longer paid an insurance carrier a premium for insurance coverage.  Instead, the State, through a self-funded program, provided CHIP health benefit coverage by payment to the provider, which was facilitated by BCBSMT in its role as third-party administrator.

conclude that our resolution of that issue also resolves the cross appeal. Given the capacity of BCBSMT in this matter as the third-party administrator of CHIP, a public assistance program, we conclude that BCBSMT is not acting as an insurer and is therefore not subject to the made whole rule for purposes of administrating the CHIP program. In sum, because CHIP is not insurance, neither is BCBSMT an insurer.

¶28    Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON