DA 12-0628

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 209

DENNIS AND CATHY HARRINGTON,

      Plaintiffs and Appellants,

    v.

THE CRYSTAL BAR, INC.,
CAPITAL INSURANCE COMPANIES,
and Does 1-5,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 08-313A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      John C. Doubek; Doubek, Pyfer & Fox LLP; Helena, Montana

      For Appellee:

      Mark A. Vucurovich; Henningsen, Vucurovich & Richardson, P.C.;
Butte, Montana

Submitted on Briefs:  May 8, 2013

Decided:   July 30, 2013

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Dennis and Cathy Harrington appeal from the order entered by the Eighteenth Judicial District Court, Gallatin County, granting summary judgment to the Crystal Bar, Inc. on their negligence and liquor liability claims. We affirm in part, reverse in part, and remand for further proceedings.

¶2 We restate and consider the following issues:

¶3 *1. Did the District Court err in granting summary judgment to the Crystal Bar on the negligence claims?*

¶4 *2. Did the District Court err in granting summary judgment to the Crystal Bar on the dram shop claim?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 The facts are presented as developed in discovery. During the late evening and early morning of October 6-7, 2007, Dennis Harrington (Harrington) visited the Crystal Bar in Bozeman with a group of friends. Harrington initiated an abrasive conversation with the front door bouncer Duane Aune (Aune), concerning the qualifications required to be a bouncer. To some extent, this conversation also involved Jason Howard (Howard), who was an acquaintance of Aune's and employed as a bouncer at another local bar. Harrington used profanities and admits to the potentially offensive nature of this conversation. The exchange between these individuals escalated, bar manager John Saunders (Saunders) was advised, and Harrington was asked to leave the bar multiple times. Harrington then voluntarily left the bar through the open front door, followed by Howard about 15 or 20 seconds later, followed by Saunders closing the door. An

2

altercation ensued, with Howard hitting Harrington on the head and causing him to fall and strike his head on a car parked in front of the Crystal Bar. Harrington sustained a serious head injury, was rendered unconscious, and was hospitalized. Howard initially began to run, but upon seeing his girlfriend, walked with her around the end of the block and re-entered the Crystal Bar through the back door. A criminal investigation surrounding this incident was conducted. Further factual assertions are set forth below.

¶6 Harrington filed a complaint organized into various sections that set forth overlapping claims of negligence, liquor liability, spoliation of evidence, and punitive damages.[1] The negligence counts generally alleged that the Crystal Bar failed to exercise proper care by adequately screening and training employees, promoted "the risk of conflict" between Harrington and Howard, failed to protect Harrington from Howard, and failed to contact law enforcement, damaging Harrington as a result. The liquor liability, or "dram shop" claim, alleged that the Crystal Bar had served alcohol "to visibly intoxicated patrons" on the night of the incident, increasing the risk of physical violence that ultimately caused harm to Harrington.

¶7 The Crystal Bar moved for summary judgment on the negligence and dram shop claims, relying on the deposition testimony of Howard and Saunders. Harrington filed a response in opposition with supporting affidavits.

---

[1] Harrington also sought declaratory judgment regarding insurance coverage in a claim against Capital Insurance Companies. This claim was later dismissed.

¶8 On the negligence claims, the District Court concluded that there were no conflicts in material facts and the Crystal Bar was entitled to judgment as a matter of law. The District Court reasoned:

> While Harrington and Howard present differing accounts of what might have been said between them, those statements are not material to disposition of the Motion. Harrington states "[t]here was no fight between me and Howard" and that he left when asked by Saunders. . . . Therefore by Harrington's own account, there was no interaction between Harrington and Howard that should have alerted or warned the Crystal Bar employees that Howard posed any danger to Harrington.

On the dram shop claim, the District Court determined it was uncontested that Howard was not intoxicated and had not been served at the Crystal Bar, concluding that the statutory requirements for the claim had not been established and the Crystal Bar was entitled to summary judgment. After receiving confirmation from the parties that all claims had been resolved by its order, the District Court entered final judgment. Harrington appeals.

## STANDARD OF REVIEW

¶9 A district court's grant or denial of summary judgment is reviewed de novo. *Steadele v. Colony Ins. Co.*, 2011 MT 208, ¶ 14, 361 Mont. 459, 260 P.3d 145 (citations omitted). "Under M. R. Civ. P. 56(c), summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Steadele*, ¶ 14. The evidence must be analyzed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of the non-moving party. *Shattuck v. Kalispell Regl. Med. Ctr.*, 2011 MT 229, ¶ 8, 362

4

Mont. 100, 261 P.3d 1021 (citation omitted). "The party moving for summary judgment has the initial burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. If this burden is met, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact does exist. If the district court determines that no genuine issue of material fact exists, the court then determines whether the moving party is entitled to judgment as a matter of law." *Corporate Air v. Edwards Jet Ctr. Mont. Inc.*, 2008 MT 283, ¶ 25, 345 Mont. 336, 190 P.3d 1111 (internal citations omitted). We review a district court's conclusions of law for correctness. *Shattuck*, ¶ 8 (citation omitted).

¶10 Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3) (2011). "A material fact is a fact that involves the elements of the cause of action or defenses at issue to an extent that necessitates resolution of the issue by a trier of fact." *Corporate Air*, ¶ 24 (citing *Arnold v. Yellowstone Mountain Club, LLC*, 2004 MT 284, ¶ 15, 323 Mont. 295, 100 P.3d 137). "Summary judgment is an extreme remedy that should never be a substitute for a trial on the merits if a controversy exists over a material fact." *Corporate Air*, ¶ 24 (citing *Mary J. Baker Revoc. Trust v. Cenex Harvest*, 2007 MT 159, ¶ 17, 338 Mont. 41, 164 P.3d 851). "Ordinarily, questions of negligence are poorly suited to adjudication by summary judgment and are better left for jury determination at trial." *LaTray v. City of Havre*, 2000 MT 119, ¶ 15, 299 Mont. 449,

5

999 P.2d 1010; *see also i.e. Scott v. Henrich*, 1998 MT 118, ¶ 13, 288 Mont. 489, 958 P.2d 709; *Brown v. Demaree*, 272 Mont. 479, 483, 901 P.2d 567, 570 (1995); *Hendrickson v. Neiman*, 204 Mont. 367, 371, 665 P.2d 219, 222 (1983) (overruled on other grounds). A cause of action in negligence consists of four elements: duty, breach of duty, causation, and damages. *Brown*, 272 Mont. at 482, 901 P.2d at 569, *see also Cusenbary v. Mortenson*, 1999 MT 221, ¶ 21, 296 Mont. 25, 987 P.2d 351. "[T]he *existence* of a duty is a question of law for determination by the court, whether that duty has been *breached*, is a question of fact to be decided by the finder of fact—in this case, the jury." *Brown*, 272 Mont. at 482, 901 P.2d at 569 (emphasis in original).

## DISCUSSION

¶11 *1. Did the District Court err in granting summary judgment to the Crystal Bar on the negligence claims?*

¶12 Harrington argues that the District Court erred by concluding there were no genuine issues of material fact because the District Court "makes numerous assertions which are either inaccurate or directly contradicted by evidence in the record." Harrington asserts there are conflicts within the record regarding the arrival and departure of Howard and Harrington at the Crystal Bar, Harrington's conversation with Aune and Howard, and the Crystal Bar's knowledge of the conflict between Harrington and Howard.[2] In response, the Crystal Bar states that the factual issues raised by Harrington

---

[2] Harrington's argument includes the allegation that Howard was or appeared to be a bouncer employed by the Crystal Bar on the night of the assault. However, Harrington does not make a specific argument in support of an actual or ostensible agency relationship between Howard and the Crystal Bar supported by authority. Thus, to the extent that Harrington intended to state such a claim, it is not properly raised.

"are either speculative or do not involve the elements of the cause of action." The Crystal Bar asserts that "[t]he evidence clearly established that the Crystal Bar never had any reason to suspect that Howard posed any danger to others" and "[t]he evidence is undisputed that the fight between Howard and Harrington occurred outside the Bar and that the Bar did not know about the fight until after it was over."

¶13   In *Kipp v. Wong*, 163 Mont. 476, 480-81, 517 P.2d 897, 900 (1974), we held that the proprietor of an establishment that serves alcoholic beverages owes patrons "the duty of exercising reasonable care to protect them from injury at the hands of a fellow patron, and of seeing to it that a patron is not injured either by those in his employ or by drunken or vicious men whom he may choose to harbor." *Kipp*, 163 Mont. at 481, 517 P.2d at 900 (citing *Nevin v. Carlasco*, 139 Mont. 512, 514, 365 P.2d 637, 638 (1961)). Continuing to quote from *Nevin*, the Court stated:

> Reviewing leading cases from other jurisdictions, [citing cases], we find the general rule to be that the duty of a tavern keeper to protect a patron from injury by another arises only when one or more of the following circumstances exist:
> (1) A tavern keeper allowed a person on the premises who has a known propensity for fighting.
> (2) The tavern keeper allowed a person to remain on the premises whose conduct had become obstreperous and aggressive to such a degree the tavern keeper knew or ought to have known he endangered others.
> (3) The tavern keeper had been warned of danger from an obstreperous patron and failed to take suitable measures for the protection of others.
> (4) The tavern keeper failed to stop a fight as soon as possible after it started.
> (5) The tavern keeper failed to provide a staff adequate to police the premises.
> (6) The tavern keeper tolerated disorderly conditions.

*Kipp*, 163 Mont. at 481, 517 P.2d at 900. These circumstances are assessed to determine whether a tavern keeper has breached the duty of reasonable care. *See Kipp*, 163 Mont. at 481-82, 517 P.2d at 900.

¶14 Citing *Kipp*, the District Court ruled that the Crystal Bar owed Harrington the duty of reasonable care to protect him from injury at the hands of a fellow patron. However, the court concluded that this duty would not extend to "acts of Howard after the parties left the Crystal Bar," effectively limiting the duty to the interior of the building. While the care of patrons will normally be exercised within the bar, the *Kipp* duties are not stated as exclusively attached to the bar's interior such that closing the bar door upon a potentially violent situation that has moved beyond the threshold cannot implicate the duty of care. Whether the Crystal Bar's duty was breached under the circumstances surrounding Howard's striking of Harrington in front of the bar is a question to be resolved by the jury.[3]

¶15 Further, after review of the record, we cannot conclude that material facts are not in dispute. Harrington has marshaled evidence that, for purposes of summary judgment, could support a jury's finding that one or more of the duties in *Kipp* have been violated, establishing negligence.

---

[3] "[J]udges sometimes say that as danger increases, so does the duty. But judges do not mean by this that a duty of reasonable care suddenly becomes a duty of excessive care. Instead, they are using 'duty' in the sense of specific conduct and mean only that the duty remains the same—reasonable care under the circumstances—while circumstances of special danger show that reasonable care may be deemed by the trier of fact to require more precautions. In many such cases the words may be the words of duty, but the process of good decisionmaking requires a determination about what counts as ordinary care under the circumstances—the question of breach, not duty." Dan B. Dobbs et al., *The Law of Torts* vol. 2, § 253, 7 (2d ed., West 2011).

*a. Conversation among Harrington, Aune, and Howard*

¶16    The District Court stated that "[u]pon entering the Crystal, Harrington was provocative." However, the complaint states that Harrington "engaged in good natured, but arguably offensive, banter with employees of the Crystal Bar concerning 'what qualifications it takes to be a bouncer,' or words to that effect." In his affidavit, Harrington adds that "I was never at any point aggressive or challenging to any employee of the Crystal Bar." Howard's recollection conflicts with Harrington's:

> [Harrington] walked into the bar and the only reason that I remember him is because he kind of started talking to Duane [Aune] and I was there and I heard exactly what was going on. He kind of challenged Duane and asked him if he had to be a tough guy to work there and said if he could – see, I couldn't tell you exactly what the words that were said, but I know that he was being – he was being provocative and he was being rude and he was challenging Duane, sort of.

Howard also described Harrington as confrontational and responded affirmatively when asked, "[d]o you think he was trying to actually challenge Duane [Aune] to a fight?" Howard added, "[w]ell, he had challenged me after he challenged Duane. I kind of butted into the conversation, asked him what his problem was, and then he kind of focussed (sic) on me." Saunders did not observe this encounter first hand, but offered that he observed Harrington using profanities.

*b. The Crystal Bar's knowledge of the potential conflict*

¶17    The District Court stated that because Harrington's affidavit indicated that there "was no fight between me and Howard," the Crystal Bar was not aware of a conflict

between Howard and Harrington.  However, Saunders admitted in his deposition that there might be a "potential situation" and was questioned about it:

> [Harrington's counsel]:  [D]id you think there was any confrontation between Mr. Harrington and Mr. Howard in your bar?
> [Saunders]:  There had—when [the other bouncer] came up to me, he said that—initially, the first thing he said was that [Harrington] had come and challenged the bouncers and then he had been aggressive or challenged or inappropriate to several customers, and I think he said that [Howard] was one of them.  But it was—he had said names, not a name, but he said he was a problem with several people and primarily there was a problem with the bouncer at the front door.
> [Harrington's counsel]:  So did he reference Mr. Howard specifically?
> [Saunders]:  Yes, I believe he did.

Later, Harrington's counsel asked "[b]ut you knew before Harrington left the bar that there had been some sort of difficulty between Harrington and Howard," to which Saunders replied "Yeah."  The Crystal Bar's counsel then asked additional questions on this point during cross examination:

> [Counsel for the Crystal Bar]:  When he says, what do I need to do to get your job, beat you up?  Is that something that you generally hear from somebody who comes into the Crystal?
> [Saunders]:  No.
> [Counsel for the Crystal Bar]:  Would somebody making that statement to you or one of your bouncers cause you concern?
> [Saunders]:  Certainly.
> [Counsel for the Crystal Bar]:  And he was intoxicated?
> [Saunders]:  Yes.
> [Counsel for the Crystal Bar]:  You have been trained to diffuse situations and see problems brewing before they ever start.
> [Saunders]:  Yes.
> [Counsel for the Crystal Bar]:  Would that be a clear indication of a problem for you?
> [Saunders]:  Yes.

10

*c. Harrington's and Howard's departure from the bar*

¶18    Saunders testified that he asked Harrington to leave the bar, and after being asked several times, Harrington left voluntarily through the bar's open door. Howard followed Harrington out 15 to 20 seconds later, as estimated by Saunders. Saunders testified after "watching [Howard] walk out to the right of the door and Mr. Harrington walk out to the left of the door," that he "closed the door," adding "I remember saying to the bouncer, You know, hey, look, make sure something, you know, that's okay/okay, all right." In response to Harrington's counsel's question, "[s]o you thought there might be a potential situation between the two of them as they were leaving the bar," Saunders responded, "[a]fter I saw them depart different ways, I did not." However, Harrington's affidavit states that, upon exiting the Crystal Bar, "Howard [took] a slight step to the right and then turn[ed] 180 degrees and come right after me."

¶19    The District Court's statement that the Crystal Bar was not aware of the friction between Harrington and Howard seems at least partially inconsistent with its statement that "Saunders had been advised Harrington was a problem and Saunders witnessed him being disrespectful to the staff and saying profanities." It is also directly contrary to Saunders' deposition, in which Saunders acknowledged he suspected there was a problem between Harrington and Howard, at least before seeing them leave in opposite directions. Even then, Saunders told a bouncer to "make sure . . . that's okay."

¶20    Analyzing the evidence in the light most favorable to Harrington, *Shattuck*, ¶ 8, we believe there are genuine issues as to material facts about which reasonable minds could

11

differ. According to Harrington, he and Howard did not actually leave in opposite directions—Howard made only a "slight step" in the opposite direction, and "turn[ed] 180 degrees and come right after me." And despite Saunders' request to a bouncer, no one apparently acted to "make sure . . . that's okay."

¶21 The record ultimately contains conflicting accounts regarding the events leading up to the assault and whether the Crystal Bar had knowledge of the conflict between Harrington and Howard. Whether the Crystal Bar satisfied its duty of reasonable care under the circumstances should be resolved by a jury that is presented this evidence at trial. The Crystal Bar did not establish there were no genuine issues of material fact, *Corporate Air*, ¶ 25, and the District Court erred in granting the motion for summary judgment on Harrington's negligence claims.

¶22 *2. Did the District Court err in granting summary judgment to the Crystal Bar on the dram shop claim?*

¶23 Harrington's arguments that the District Court erred in granting summary judgment on his dram shop claim parallel his negligence arguments. He argues there are genuine issues of material fact regarding how much Howard had to drink and whether the Crystal Bar served Howard. The Crystal Bar responds that the District Court correctly granted summary judgment because it is uncontested that Howard was of legal drinking age, was not visibly intoxicated, and was not served at the Crystal Bar.

¶24 Section 27-1-710, MCA, commonly referred to as Montana's Dram Shop Act, sets "statutory criteria governing the liability of a person or entity that furnishes an alcoholic beverage for injury or damage arising from an event involving the person who consumed

12

the beverage." Section 27-1-710(1), MCA; *see also Rohlfs v. Klemenhagen, LLC*, 2009 MT 440, ¶¶ 16, 25, 354 Mont. 133, 227 P.3d 42. The Act reads in pertinent part:

> (3) Furnishing a person with an alcoholic beverage is not a cause of, or grounds for finding the furnishing person or entity liable for, injury or damage wholly or partly arising from an event involving the person who consumed the beverage unless:
>     (a) the consumer was under the legal drinking age and the furnishing person knew that the consumer was underage or did not make a reasonable attempt to determine the consumer's age;
>     (b) the consumer was visibly intoxicated; or
>     (c) the furnishing person forced or coerced the consumption or told the consumer that the beverage contained no alcohol.

Section 27-1-710(3), MCA. As we have stated, "a tavern owner is liable for foreseeable injury-producing accidents of a patron if the tavern owner provided alcohol to a 'visibly intoxicated' patron." *Cusenbary*, ¶ 22.

¶25 However, there is no evidence that Howard was served alcohol by the Crystal Bar prior to the altercation. Saunders' deposition affirmatively states that Howard had not been served alcohol at that point. Howard testified at one point in his deposition that he "hadn't even got (sic) a drink there when this whole thing happened," but later stated that he "couldn't be positive" if he had gotten a drink at the Crystal Bar. Howard's uncertain memory cannot affirmatively establish the point. *See Weaver v. Advanced Refrigeration*, 2011 MT 174, ¶ 13, 361 Mont. 233, 257 P.3d 378 (internal citation omitted) ("To raise a genuine issue of material fact, the proffered evidence must be 'material and of a substantial nature, not fanciful, frivolous, gauzy or merely suspicious.'"). The record contains no affirmative statements that Howard was served by the Crystal Bar prior to the altercation. Even analyzing the evidence in a light most favorable to Harrington, the

13

Crystal Bar has demonstrated "the absence of genuine issues of material fact" on a key point—Howard had not been served. *Corporate Air*, ¶ 25.

¶26   The District Court correctly granted summary judgment to the Crystal Bar on Harrington's dram shop claim.

¶27   Affirmed in part, reversed in part, and remanded to the District Court for further proceedings.

/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS